HENRY BUSENBARK, *et al.*, v. AUGUSTA BUSENBARK.

1. REAL ESTATE OF HUSBAND—*Right of Wife—Action.* While the wife's right and interest in the real estate of her husband, not occupied by the family as a homestead, is inchoate and uncertain, yet it possesses the element of property to such a degree that she may maintain an action during the life of her husband to prevent its wrongful alienation or disposition under fraudulent judgments procured and consented to by the husband with the object and for the purpose of defeating the wife's right.

2. FRAUDULENT JUDGMENT—*Action to Enjoin Enforcement; Venue.* An action may be maintained to perpetually enjoin the enforcement of a judgment procured through fraud of the parties for the purpose of defrauding a third person, and such third person may maintain such action in any county in which the attempt is made to put the fraudulent judgment in force to his injury, although the judgment may have been rendered in another county.

3. DIVORCE; *Cross-Petition; Costs.* Where a wife commences an action against her husband for divorce, and in answer thereto the husband also files his cross-petition for a divorce, which cross-petition for divorce he withdraws by leave of the court, after the evidence in the case is closed, the trial court commits no error in requiring the husband to pay all reasonable expenses of the wife in the defense of such cross-petition, including her attorney's fees.

4. DIVORCE—*Both Parties in Equal Wrong; Control of Property.* Where a wife commences an action against her husband for a divorce, and upon the trial it appears that the parties are in equal wrong, and the court refuses to grant a divorce, the court may, for good cause shown, make an order for the control and disposition of the property of the parties as may be proper; and in disposing of the property, may set apart to the wife absolutely personal property, and also give her the rents and profits of real estate. (Code, § 643.)

*Error from Sedgwick District Court.*

ACTION commenced by *Augusta Busenbark* against *Henry Busenbark*, John A. Busenbark, Josephine Underwood and H. R. Watt, November 26, 1883, to obtain a divorce from her husband, *Henry Busenbark*, on the grounds of extreme cruelty and gross neglect of duty. The petition alleged, among other things, that her husband, for the purpose and with the intent of defrauding her of all interest in his estate, and to defeat

any judgment for alimony, entered into collusion with his son John A. Busenbark and his daughter Josephine Underwood, whereby the son and daughter each obtained a personal judgment against him in the district court of Harvey county, on September 26, 1883, for the sum of $7,912; that executions had been issued on the judgments, levies made on all his real estate except his homestead, and that the same was advertised for sale. She further alleged in her petition that each of the judgments was fraudulent and in fraud of her rights, and that it was the intention of her husband to so dispose of and cover up his property as to place the same beyond her reach, and then desert her, leaving her without proper means of support. She prayed for a divorce; that the said judgments be declared fraudulent; that she have temporary and permanent support; and that an injunction issue and be made perpetual upon the final hearing.

*Henry Busenbark* filed his separate answer, with a cross-petition for divorce. He denied each allegation of extreme cruelty and gross neglect of duty; denied the collusion charged, the intention of abandonment, and the intention of leaving her without support; admitted that the judgments were obtained, but denied that they were fraudulent and void. He alleged that he had, several years prior to the time that the judgments were obtained, given said son and daughter each a quarter-section of land, being the same land levied upon, as an advancement to them, and that each had been in possession of the land for several years, and made valuable and lasting improvements.

John A. Busenbark and Josephine Underwood each filed a separate answer. They denied any collusion with their father to defraud the plaintiff; they alleged that the lands levied upon belonged to them, having been been given them by their father as their portion and advancement; that they had been put in possession thereof; that they had made valuable and lasting improvements on the land; that while the notes upon which the judgments were obtained were given for no valuable consideration, there was a consideration by way of natural

love and affection; that as the plaintiff had refused to sign with their father the deeds of the land to them, they sought through the judgments and the intended sale thereunder to obtain the legal title to the premises levied upon.

Trial at the June Term, 1884. After the evidence had closed, *Henry Busenbark* withdrew, by leave of the court, his cross-petition. The court made the following conclusions of fact:

"That on the 26th day of September, 1883, in a certain action pending in the district court of Harvey county, Kansas, wherein the said John A. Busenbark was plaintiff and the said Henry Busenbark was defendant, the said John A. Busenbark recovered a judgment against said Henry Busenbark for the sum of $7,912, with interest thereon at the rate of twelve per cent. per annum; that on the 26th day of September, 1883, in a certain action pending in the district court of Harvey county, Kansas, wherein the said Josephine Underwood was plaintiff and said Henry Busenbark was defendant, the said Josephine Underwood recovered a judgment against said Henry Busenbark for the sum of $7,912, with interest thereon at the rate of twelve per cent. per annum; that on the 23d day of October, 1883, the said John A. Busenbark and Josephine Underwood caused executions to be issued out of the office of the district court of said county of Harvey, for the collection of said judgments; that said executions were directed to the sheriff of Sedgwick county, Kansas, and were received by him on the 25th day of October, 1883; that on the — day of ——, 1883, H. R. Watt, said sheriff, caused said executions for the collection of said judgment, in favor of said John A. Busenbark, to be levied upon the following-described premises in Sedgwick county, Kansas: The southwest quarter of section 12, township 25, range 1 east; also northwest quarter of southwest quarter of section 23, township 25, range 1 west; that on the — day of ——, 1883, H. R. Watt, said sheriff, caused said executions for the collection of said judgment in favor of Josephine Underwood, to be levied on the following-described premises in Sedgwick county, Kansas, to wit: The northeast quarter of section 13, township 25, range 1; also, northeast quarter of southwest quarter section 23, township 25, range 1 west; that on the 2d day of November, 1883, the said H. R. Watt, sheriff as aforesaid, caused said premises to be. advertised for sale under said levies

aforesaid; that said judgments so rendered in the district court of Harvey county, Kansas, as aforesaid, are fraudulent and void; that the attempted sale of said premises under said executions was for the purpose of vesting the title to said real estate in the said John A. Busenbark and Josephine Underwood, in fraud of the rights of said plaintiff; that no grounds of divorce exist in favor of the plaintiff herein; that the plaintiff has no property, real or personal, in her own name and right; that at the commencement of this action the defendant was the owner of the following real property, to wit: The northeast quarter of section 13, township 25, range 1 east; and northeast quarter of southwest quarter of section 23, township 25, range 1 west; the southwest quarter of section 12, township 25, range 1 east; and northwest quarter of southwest quarter of section 23, township 25, range 1 west; also the east half of northwest quarter of section 18, township 25, range 2 east—all in Sedgwick county, Kansas, and personal property of large value; that for a long time prior to the commencement of this action, the defendant Henry Busenbark, in collusion with defendants John A. Busenbark and Josephine Underwood, were and ever since have been fraudulently attempting to cover up and dispose of all aforesaid property, for the purpose of defeating the said plaintiff in any right or interest which she might have in or to said property, depriving her of her means of support, and of the abandonment of said plaintiff by said Henry Busenbark, and that said judgments were rendered and said executions were issued in pursuance of said fraudulent attempt."

Thereon, the court made conclusions of law, and adjudged as follows:

"That the said judgments, rendered as aforesaid in the district court of Harvey county, Kansas, in favor of said John A. Busenbark and Josephine Underwood, be and they are hereby declared to be fraudulent and void; that said executions and levies constitute no lien on said premises; that said Henry Busenbark, John A. Busenbark and Josephine Underwood be and they are hereby enjoined and restrained from collecting or attempting to collect said judgments, or from selling or attempting to sell said premises, or any part thereof, or from mortgaging or in any way incumbering said property or any part thereof without the assent of said plaintiff, Augusta Busenbark; that said plaintiff have the right conjointly with said defendant Henry Busenbark to the possession and occupancy

of the following premises, heretofore occupied as a homestead by the plaintiff and defendant, to wit: the east half of the northwest quarter of section 18, township 25, range 2 east, in Sedgwick county, Kansas; that plaintiff have the issues, rents and profits of the following-described premises, and that she have the right to rent and control the same: the southwest quarter of section 12, township 25, range 1 east, in Sedgwick county, Kansas; that the defendant Henry Busenbark return to the plaintiff and that she have as her separate and absolute property all the household goods in the house of said homestead or belonging thereto, one horse named 'Sam,' heretofore kept on said homestead, two cows, one stirring-plow and cultivator; that said defendants Henry Busenbark, John A. Busenbark and Josephine Underwood be and they are hereby enjoined and restrained from in any way interfering with said plaintiff in the peaceable possession of the said homestead premises, to wit, the east half of the northwest quarter of section 18, township 25, range 2 east, Sedgwick county, Kansas, or in the renting, controlling or receiving the issues, rents and profits of the said southwest quarter of section 12, township 25, range 1 east, of said county of Sedgwick; that plaintiff have and recover of and from defendant Henry Busenbark the sum of $50 as her reasonable attorney's fees herein, and that defendant Henry Busenbark pay the costs of this action, taxed at eighty-seven and fifty one-hundredths dollars, ($87.50.)"

The defendants filed their motion for a new trial, which was overruled. They excepted, and bring the case here.

*J. W. Ady*, and *Ruggles & Parsons*, for plaintiffs in error.
*Stanley & Wall*, for defendant in error.

The opinion of the court was delivered by

HORTON, C. J.: It is claimed that the district court of Sedgwick county had no power or jurisdiction to enjoin the judgments rendered by the district court of Harvey county, on September 26, 1883, in favor of John A. Busenbark and Josephine Underwood against Henry Busenbark; and further, that the court erred in finding these judgments to be fraudulent and void. A wife residing in this state is entitled, upon the death of her husband, to the half of all the real estate owned

by him during the marriage which has not been sold on judicial sale, and is not necessary for the payment of debts, and of which the wife has made no conveyance; so that there is an inchoate interest to the extent of one-half given to the wife in the real estate of the husband. It is true that this interest in the real estate of the husband is inchoate and uncertain, yet, according to the authorities, it possesses the element of property. It is an interest and right of which she can be divested only by her consent, or crime, or her dying before her husband. It is an interest which may be, in connection with the husband, the subject of contract and bargain, and is by many of the authorities denominated a contingent but valuable interest. It has been decided by this court that the wife has an estate in the homestead occupied by herself and husband, although the title to the same be in the husband, and that it is such a present and existing estate that it will be protected by the courts. (*Helm v. Helm*, 11 Kas. 19; *Jenness v. Cutler*, 12 id. 500.) We now go further, and declare that although the wife's right and interest in the real estate of her husband not occupied as a homestead is inchoate and uncertain, yet it possesses the element of property to such a degree that she may maintain an action during the life of her husband for its protection, and for relief from fraudulent alienation by her husband. (*Busick v. Busick*, 44 Iowa, 259; *Thayer v. Thayer*, 39 Am. Dec. 211–220, and the note and authorities there cited.)

Now it is well settled, that fraud invalidates judgments, as well as contracts or other acts, and that a court of equity has power to grant relief against judgments fraudulently obtained. Whenever a judgment is procured through fraud of the parties thereto, for the purpose of defrauding a third person, such third person may escape from the injury thus attempted, by establishing in a separate and independent suit the fraud or collusion by which the judgment was obtained. (Freeman on Judgments, § 336.) The fraudulent judgments in this case were rendered in Harvey county, but executions were issued to the sheriff of Sedgwick county, and the prem-

ises of the husband in Sedgwick county were levied upon and were about to be sold in pursuance of a fraudulent scheme concocted between the husband and his children, with the object and for the purpose of defeating the wife's rights. When the parties to the fraudulent judgment sought to enforce it in Sedgwick county, it was competent for the wife to relieve herself from the injury thus attempted, by her action in Sedgwick county to prohibit the sale of the real estate. (*Chambers v. Bridge Manufactory*, 16 Kas. 270.)

The cases of *Meixell v. Kirkpatrick*, 28 Kas. 315, and *Galbreath v. Drought*, 29 id. 711, are confidently cited to support the proposition that the district court of Sedgwick county had no jurisdiction over the judgments in Harvey county, or power to enjoin the executions issued from the district court of Harvey county on the judgments rendered therein. Those cases are bottomed upon irregular and erroneous judgments — not upon fraudulent and void judgments — and therefore are not applicable. It was said in *Meixell v. Kirkpatrick*, supra, that "a void judgment may be treated as void everywhere, and collaterally as well as directly, while a judgment that is merely irregular, or erroneous, or voidable, cannot be so treated." It was also said in *Klemp v. Winter*, 23 Kas. 699, that "fraud vitiates everything it touches — final judgments, final orders, final settlements and contracts, as well as things of less consequence, and that courts possessing general equity or chancery jurisdiction have the power to grant proper relief in all cases of fraud." Upon the record, we perceive no error in the finding and the conclusion of the trial court, that the judgments of the district court rendered against Henry Busenbark in favor of his children were fraudulent and void.

It is next claimed that the judgment giving the wife certain personal property and also the rents and profits of a quarter-section of land was improper. The statute controls. This provides:

"When the parties appear to be in equal wrong, the court may, in its discretion, refuse to grant a divorce; but in any such case, or in any other case where a divorce is refused, the

court may, for good cause shown, make such order as may be proper for the custody, maintenance and education of the children, or the control and disposition of the property of the parties as may be proper." (Code, § 643.)

Its provisions are broad enough to sustain the court in its judgment relating to the disposition of the property of the parties. Its constitutionality is not challenged. The husband and wife had been married about fifteen years. The wife was a very industrious and hard-working woman; she had not only performed the customary household work, but had also assisted her husband at his labors upon the farm and in his business, upon various occasions, and in various ways; she herded cattle, spaded ground, butchered hogs and cattle, etc. Her labors must have aided him in accumulating property, and before he commenced disposing of his personal and real estate he was in good circumstances, having, besides his personal property, over five hundred acres of valuable land. The evidence shows that Henry Busenbark gave as the reason for marrying his wife, "that she was a German, and he thought they could do more work than any other class of people." Prior to the trouble that grew up between them on account of the refusal of the wife to join in conveying the real estate to her husband's children, the husband had no complaint to make that his wife did not do all the work he expected of her when he married her. He had cause, perhaps, to complain of her tongue, but not of the work of her hands. If the power existed in the trial court to make any disposition of any part of the property of the husband for the benefit of the wife, the order of the court was just and reasonable.

It is also claimed that the trial court erred in requiring the husband to pay $50 attorney's fees. Section 644, among other things provides: "On granting a divorce in favor of the wife, or refusing one on the application of the husband, the court may require the husband to pay all reasonable expenses of the wife in the prosecution or defense of the action." The husband filed a cross-petition for a divorce. It is true that he withdrew this by leave of the court after the evidence had closed, but

the expense to the wife in resisting this application for divorce had already accrued at the time of the withdrawal of such petition. We suppose it was withdrawn in anticipation that the court would refuse the application of the husband for a divorce. Within the spirit of the law, if not within its exact letter, the court committed no error in requiring the husband to pay all reasonable expenses, including attorney's fees of the wife in defending against such cross-petition.

Other alleged errors are referred to in the arguments; but, believing that the findings of the court are sufficiently sustained by the evidence, and that none of the said alleged errors were prejudicial to the rights of the parties complaining, the judgment of the district court must be affirmed.

All the Justices concurring.