Nagle v. Tieperman.

---

PAUL R. NAGLE v. LOUIS TIEPERMAN.

No. 14,579.   (85 Pac. 941.)

SYLLABUS BY THE COURT.

1. HUSBAND AND WIFE—*Payment of Taxes.* The mere fact that the relation of husband and wife exists does not impose upon either spouse a legal or moral obligation to pay taxes upon real estate owned by the other.

2. ——— *Interest of One Spouse in Property of the Other.* One spouse has no estate in the real property of the other, and has no interest therein by virtue of such relation which imposes a legal or moral obligation to pay taxes upon the real estate of the other.

3. ——— *Wife May Acquire Tax Title to Husband's Land.* A wife, not being in possession or receiving the rents and not being under any other legal or moral obligation to pay the taxes, may acquire title to land owned by her husband and others by purchase at a sale for taxes or by purchasing a tax-sale certificate, provided such purchase is made in good faith and with her own money.

Error from Stafford district court; JERMAIN W.

Nagle v. Tieperman.

Brinckerhoff, judge.    First opinion filed June 9, 1906.    Affirmed.    Rehearing allowed October 6, 1906. Second opinion filed February. 9, 1907.    Reaffirmed.

## STATEMENT.

The plaintiff in error brought this suit in the district court of Stafford county against the defendant in error, claiming to be the owner of a two-thirds interest in a one-half section of land in that county, that the defendant was in possession of the same and owned an undivided one-third interest therein, and that he entirely excluded the plaintiff from the possession thereof.    The petition also asked for a partition of the land according to the interests alleged.

It appears without controversy that in 1883 J. W. Fike and Henry Fike and their sister, Anna Fike, became joint owners of the land in equal shares, but that the legal title was taken in the names of the two brothers, and that in 1887 J. W. Fike and his wife, Katie M. Fike, and the brother, Henry Fike, conveyed an undivided one-third interest in the land to their sister, Anna Fike.    The deed of conveyance was not recorded until May 15, 1901.    None of the Fikes ever resided in the state of Kansas.

The taxes for the year 1888 not having been paid, the land was sold for taxes in 1889 and a tax-sale certificate issued therefor to one W. P. Peter.    In August, 1892, Katie M. Fike, the wife of J. W. Fike, out of her own separate estate and individual funds procured an assignment of such tax-sale certificate to herself, and a tax deed for the land was issued to her by the county clerk of Stafford county on the 5th day of December, 1892, and recorded on the same day.    Immediately after receiving the tax deed she took actual possession of the land and continued in the possession thereof until she sold the same to the defendant.    In February, 1899, Katie M. Fike and her husband, in consideration of $1600, made and delivered to the defendant a general warranty deed for all of the real estate in contro-

3—74 KAN.

versy, and this deed was recorded in Stafford county on the 4th day of April, 1899. On the 29th day of April, 1901, Henry Fike and Anna Fike, by separate quitclaim deeds, in consideration of $50 each, conveyed or attempted to convey an undivided one-third interest in the land to the plaintiff in error.

This suit was commenced on the 17th day of May, 1901. The case was tried at the February, 1905, term of the district court of Stafford county, and resulted in a judgment in favor of the defendant. The plaintiff brings the case here.

Since this proceeding was commenced in this court the defendant died, and the suit was revived in the name of his lawful heirs.

*T. W. Moseley,* for plaintiff in error.

*George A. Vandeveer,* and *F. L. Martin,* for defendant in error.

The opinion of the court was delivered by

SMITH, J.: This is, in effect, a suit to have a tax deed issued to Katie M. Fike adjudged void, at least as to a two-thirds interest in the land in question. If the tax deed is void the plaintiff is entitled to recover an interest in the land; otherwise the defendant, as the court below adjudged, was the sole owner of the land at the time of the commencement of the suit. If the plaintiff is entitled to recover any interest in the land the judgment of the court below should be reversed; otherwise it should be affirmed. Section 7680 of the General Statutes of 1901 provides:

"Any suit or proceeding against the tax purchaser, his heirs or assigns, for the recovery of lands sold for taxes, or to defeat or avoid a sale or conveyance of lands for taxes, except in cases where the taxes have been paid or the land redeemed as provided by law, shall be commenced within five years from the time of recording the tax deed, and not thereafter."

The tax deed in question had been recorded nearly twice five years before the commencement of this suit,

and the taxes had not been paid nor had the land been redeemed "as provided by law," unless Katie M. Fike, as the wife of one of the cotenants, is by reason of such marriage relation disqualified from acquiring the title to the land by a tax deed and her attempt to do so amounted to a payment of the taxes or to a redemption. The following question, then, to which the plaintiff asks an affirmative answer and the defendant a negative answer, is the sole question for our consideration: Where the marriage relation exists can one spouse, who is not in the possession and is not deriving benefits from the land of the other, in good faith and with his or her separate means, acquire the title to such land of the other, or to land of which the other is a cotenant, by a tax deed?

The answer to this question depends upon whether or not one spouse has such an interest or estate in the real property of the other, by virtue of such relationship alone, as imposes upon him or her either a legal or a moral obligation to pay taxes upon the real estate of the other. The common law and the decisions of the courts of sister states where marital relations and the rights of the spouses are essentially different from such relations and rights under the constitution and laws of this state afford us little or no aid in arriving at the proper determination of this case. The decisions of the courts of this state, and indeed the decisions of this court, have been conflicting upon the question, and it is hoped that by this decision it may be satisfactorily settled and that property rights involved may be permanently determined. It is of great importance that a right so frequently called in question should be settled and determined.

At the very formation of our state a radical departure from the common-law relations between husband and wife was provided for. Section 6 of article 15 of our constitution reads:

"The legislature shall provide for the protection of the rights of women, in acquiring and possessing prop-

erty, real, personal and mixed, separate and apart from the husband; and shall also provide for their equal rights in the possession of their children." (Gen. Stat. 1901, § 232.)

In obedience to this constitutional mandate the legislature enacted the "married woman's act," which reads in part as follows:

"SECTION 1. The property, real and personal, which any woman in this state may own at the time of her marriage, and the rents, issues, profits or proceeds thereof, and any real, personal or mixed property which shall come to her by descent, devise or bequest, or the gift of any person except her husband, shall remain her sole and separate property, notwithstanding her marriage, and not be subject to the disposal of her husband or liable for his debts.

"SEC. 2. A married woman, while the marriage relation subsists, may bargain, sell and convey her real and personal property and enter into any contract with reference to the same in the same manner, to the same extent and with like effect as a married man may in relation to his real and personal property.

"SEC. 3. A woman may, while married, sue and be sued, in the same manner as if she were unmarried.

"SEC. 4. Any married woman may carry on any trade or business, and perform any labor or services, on her sole and separate account; and the earnings of any married woman from her trade, business, labor or services shall be her sole and separate property, and may be used and invested by her in her own name." (Gen. Stat. 1901, §§ 4019-4022.)

The spirit and intent of the constitutional provision should be recognized by the courts in the interpretation of the law relating to married women as implicitly as it was the duty of the legislature to regard it in passing a law to give it effect. And the courts of this state should ignore any principle of the common law and the decisions of any sister state, although sustained by never so high authority, if they conflict with the spirit of this constitutional provision or with the letter or spirit of this statute. And this in the main is the history of the decisions of this court. Step by step

these decisions have discarded the shackles which the common law placed upon married women, and, passing beyond the mere letter of the statute, by interpretation have advanced toward the real spirit of the constitutional provision. With the added powers and rights they have accorded to married women they have also imposed upon them added responsibilities. And with the decreased power of the husband over the person and property of the wife have come decreased responsibilities, especially for the care of her property. If she participates in crime it is no longer presumed that she does so by the compulsion of her husband. She is as fully amenable to the law as is he; judgment is rendered against her on her promissory note although she may only be a surety; she may contract her services and skill in the future and is liable for damages if she fails to perform the contract, and, if she perform it, may recover the value of her services. Without any separate estate she may purchase property on credit and her obligation to pay is valid. She is liable upon her covenants of warranty in a deed in which she joins with her husband for the conveyance of his land. Indeed it is almost literally true, as said by Mr. Justice Valentine in *The State v. Hendricks*, 32 Kan. 559, 564, 4 Pac. 1053: "In Kansas, women have all the rights and privileges that men have, except merely that they cannot vote at general elections."

In *Harrington v. Lowe*, 73 Kan. 1, 84 Pac. 570, a well-considered opinion by Mr. Justice Burch, unanimously concurred in by the other members of the court, it was said:

"Therefore the one-person idea of the marriage relation as expounded by the common-law authorities can no longer be made the touchstone of a married woman's rights or capacities in this state. Her powers and responsibilities do not depend upon the principle of unity, but upon the principle of diversity." (Page 20.)

Conversely, it is evident that the above excerpt, if applied to the rights, capacities, powers and responsi-

bilities of a married man, would be equally true. He is no longer, by virtue of his relation, the owner, nor even the trustee, of his wife's property. He may sell to or buy from her as freely as with a third person, and if his contracts with her are in good faith and for a fair consideration his and her creditors are as helpless to interfere as they would be to interfere with his dealings with a third person.

In view of the profound admiration and even veneration which every true lawyer must feel for that grand system of jurisprudence known as the common law, which has indicated the high-water mark of advancing civilization for at least four centuries, and has been illuminated by the reasoning and refinement of the greatest minds of those ages, it is not strange that, in the advancing march toward a higher civilization and a greater freedom for one-half of the people of Kansas, provided for them in the state constitution, even the highest court in this state should occasionally take a backward glance and a receding step. This is in accord with all the impulses of our nature and with the history of all social and judicial advancement. Thus we find that after this court had decided, in *Broquet v. Warner*, 43 Kan. 48, 22 Pac. 1004, 19 Am. St. Rep. 124, in accordance with the numerous previous decisions of this court as to the right of husband and wife to invest, manage and control his or her separate fortune independently of the other, that the mere fact of marriage does not impose upon the husband any obligation to pay taxes upon his wife's land, and of itself does not disqualify him from acquiring title thereto by tax deed, in *Warner v. Broquet*, 54 Kan. 649, 39 Pac. 228, it overruled the former decision.

Let us then examine these two decisions, since both cannot be right, to see which, if either, is in accord with the constitutional provision and the statute enacted thereunder.

The statute above quoted guaranteed to every married woman that the property which she had at her

marriage, with the rents, issues and profits thereof, should remain her sole and separate property and not be subject to disposal by her husband *nor liable for his debts;* that she might bargain, sell and convey her property and might enter into any contract with reference to the same, to the same extent and effect as might any married man; that she might carry on any trade or business and that her earnings from a trade or business, labor or services would remain her separate property and might be used and *invested by her in her own name.* This court by repeated decisions has interpreted this statute to mean that a woman may not only sell and convey her property but may buy it for cash or on credit or may barter for it. Mrs. Fike bought the tax certificate from W. P. Peter, and, since it is agreed that she bought it with her own money, the presumption is that the money was derived from property which she had at the time of her marriage, or had inherited, or that she had acquired it by her own labor, trade or business or from the profits of her individual investments. In either case she had the absolute, unqualified right under the statute to invest it in her own name, and that it should not be subject to the disposal of her husband nor liable for his debts. She did invest it in her own name, and, if the statute means anything, she was entitled to the benefit of her investment, which was the title to the land sold for taxes, provided it was not redeemed according to law.

Harking back to the rule of the common law it is contended that, as her husband could not acquire the title of his cotenants to the land in question, Mrs. Fike could not so acquire such title. It was said in *Warner v. Broquet,* 54 Kan. 649, 650, 39 Pac. 228:

"Both husband and wife have an interest, either direct or indirect, in each other's real estate. These interests and the mutual confidence which ought to exist between husband and wife forbid either from obtaining a tax title upon the real estate of the other."

To apply this rule to this case would be to deny to

Mrs. Fike arbitrarily, and in deference to a common-law rule, a right which the statute expressly confers upon all married women. It would subject her money or property to disposal by her husband and would make the same liable for the payment of his debts. If she obtained no title by the purchase of the tax-sale certificate, the securing of the deed, and the payment of taxes on the land for many years, any creditor of her husband could have levied upon and sold his interest in the land, as could also the creditors of his cotenants their interests, free and clear of any lien or claim of hers. If it was a voluntary payment of her husband's and his cotenants' taxes she would have no remedy to recover from him or them the money paid, and, in case of the partition of the land between the husband and his cotenants, he would have no recourse to recover from them the taxes which his wife had voluntarily paid for them. Again, Katie M. Fike never having been a resident of the state, her husband and his cotenants could have sold and conveyed the entire interest in the land without her consent and free from any lien or claim in her favor, even as the cotenants have attempted to do in this case. Furthermore, as Katie M. Fike has sold and by warranty deed conveyed to the defendant the land in question for the consideration of $1600, if she acquired no title by her tax deed she is responsible in damages to her grantor under her warranty.

Thus this common-law theory not only denies to a married woman the rights accorded to her by the laws of the state, but, if applied to this case, would become the instrument of fraud. It would render the records of the county unreliable as an evidence of title to land. The tax deed had been of record much more than five years. It contained no information that the grantee therein was the wife of one tenant in common of the land. The county treasurer's books showed neither that the taxes had been paid nor that the land had been redeemed according to law. Lawyers advised

that all action against the tax deed was barred, and
that the grantee therein had and could convey good
title.  Relying on these records, and thus advised, the
defendant bought the land for $1600.  If the common-
law theory should prevail he could pocket his loss or
seek his remedy against his warrantor in a distant
state, there, perchance, to discover that she is insolvent.
On the other hand, Henry and Anna Fike are entitled
to little consideration.  Knowing their land was sub-
ject to taxation they gave it no attention for thirteen
long years.  Their grantee, the plaintiff, has no greater
equities.  For a trifling consideration he bought a law-
suit, hoping to reap where, not he, but others, had
sown.

Katie M. Fike's interest in the land, prior to her pur-
chase of the tax-sale certificate, was quite analogous to
the interest of an heir.  Suppose that she and her hus-
band had a son, an only child.  She being a non-resi-
dent of the state, the husband and father could have
disposed of his interest in this land without the con-
sent of the wife or of the son.  Upon the death of the
husband and father, if the land had not been conveyed
prior thereto, and had not been necessary for the pay-
ment of his debts, the wife and son would each have in-
herited one-half in value of the land.  It could not be
contended that the son would have been incapable of
procuring title to his father's land by a tax deed.  A
mortgagee might have had an interest in this land of
far greater value than the inchoate interest of the wife,
yet, as has been repeatedly held by this court, he could
have acquired title to the entire fee by a tax deed.  It
was said in *Busenbark v. Busenbark,* 33 Kan. 572, 7
Pac. 245:

"While the wife's right and interest in the real estate
of her husband, not occupied by the family as a home-
stead, is inchoate and uncertain, yet it possesses the
element of property to such a degree that she may
maintain an action during the life of her husband to
prevent its wrongful alienation or disposition under
fraudulent judgments procured and consented to by

the husband with the object and for the purpose of defeating the wife's right." (Syllabus.)

That was a suit for divorce by the wife against her husband, and to set aside fraudulent judgments which he had consented to and procured to be rendered against him for the purpose of defrauding his wife of her rights in case of divorce. Upon granting a divorce to the wife it is by statute made the duty of the court to award to the wife all of her separate property, and the court may further award her such portion of the husband's property or may award her such sum in money, as alimony, as seems equitable. If the wife has no separate property the court may award her such portion of his property or sum in money out of his estate as seems equitable. The judgment in that case might as well have been based upon the personal obligation of the husband to support and maintain his wife. A judgment creditor would under the same circumstances have had the same right to maintain a suit to prevent the wrongful alienation or disposition of his debtor's property under fraudulent judgments procured and consented to by the debtor, yet it would not be contended that a judgment creditor has such an interest in the real estate of his debtor that he could not acquire title thereto by a tax deed. The cases of *Busenbark v. Busenbark, supra,* and *Munger v. Baldridge,* 41 Kan. 236, 21 Pac. 139, 13 Am. St. Rep. 276, base the argument that the wife has a present interest and property in the real estate of her husband upon the provision of the statute of descents and distributions which reads:

"One-half in value of all the real estate in which the husband, at any time during the marriage, had a legal or equitable interest, which has not been sold on execution or other judicial sale, and not necessary for the payment of debts, and of which the wife has made no conveyance, shall, under the direction of the probate court, be set apart by the executor as her property, in fee simple, upon the death of the husband, if she survives him." (Gen. Stat. 1901, § 2510.)

The argument is fallacious. The conclusion does not follow that the wife has a present property interest in the real estate of her husband. If so it would be repugnant to the fourteenth amendment to the constitution of the United States, in that the property interests of the wife could be sold on an execution against her husband in an action to which she was not a party. This is not due process of law. It would also be repugnant to the constitution and statutes of Kansas hereinbefore cited. At most this statute creates an interest in the husband's real estate which attaches, not during his lifetime, but upon his death. It has been frequently decided that the husband has the same rights in the property of the wife that the wife has in his property, upon the death of either, respectively. In fact section 2529 of the General Statutes of 1901 expressly so provides. Yet the constitution of our state, before cited, commands the legislature to make provision to protect the rights of women to acquire and possess real property, separate and apart from the husband, and as before said the legislature has complied with the mandate, and to that extent the act of the legislature has the potency of a constitutional provision. Now it is impossible for a married woman to own real estate separately from her husband and at the same time for the husband to have a property interest in the same. It seems more logical to say that the statute last above quoted was enacted for the protection of purchasers. The husband and the wife each having the right not only to acquire real estate from others, but to sell and convey one to the other, it may have been anticipated that it would be difficult for third parties to determine their respective rights in lands to which either held the legal title. It is a matter of public policy that land titles should be kept free from doubt and that the public records should be a reliable index to the condition of such titles.

However this may be, the argument of present interest fails when applied to this case. Under the pro-

viso to the section of the statute last above quoted it is not requisite that the wife should sign her husband's deed to his land to devest her of her contingent interest when at the time of the conveyance she had never been a resident of this state.

If we are right in our conclusions thus far—that the wife has no present interest in the real estate of her husband which forbids her from obtaining a tax title on his real estate—there only remains to determine whether or not the "mutual confidence," the remaining ground for the decision in *Warner v. Broquet,* 54 Kan. 649, 39 Pac. 228, forbids the same. As a complete answer to this contention, attention is again called to *Harrington v. Lowe,* 73 Kan. 1, 84 Pac. 570. Also the following from the opinion of Mr. Chief Justice Johnston, in *Munger v. Baldridge,* 41 Kan. 236, 21 Pac. 139, 13 Am. St. Rep. 276:

"The statutes of Kansas recognize no conflict of interest between them [husband and wife], nor any necessity to protect the wife against the act of the husband. They do not contemplate that she may be led to convey her interest through fear, compulsion, or the undue influence of her husband; and hence we have no enactment, as some states do, that in making a conveyance she must undergo a private examination by an officer to learn whether she is intimidated by her husband or is executing the conveyance against her will. On the contrary, the law proceeds upon the theory of confidence, good faith and honest dealing between husband and wife." (Page 244.)

In other words there is no presumption that the mutual confidence which should exist between husband and wife has been betrayed by either, and any denial of a right to either, based on such an assumption, is a wrong. The utmost good faith and fair dealing should be, and is, demanded of each in dealing with the other; and, if either is wronged by a breach of the trust and confidence which the other has a right to rely upon, the courts of our state are sensitive to afford speedy relief.

Instead of its being a fraud or wrong upon the rights

of the husband to maintain the title of the wife, acquired under the tax deed in this case, it would, as before indicated, be a great wrong to him as well as to her to deny her the rights guaranteed to her under the constitution and laws of the state. He has recognized her title to the land and has executed with her a deed of general warranty therefor to the defendant.

The principle here enunciated has been asserted in *Broquet v. Warner*, 43 Kan. 48, 22 Pac. 1004, 19 Am. St. Rep. 124, and has been denied in *Warner v. Broquet*, 54 Kan. 649, 39 Pac. 228. The latter case, so far as it overrules the former, should in turn be overruled, and the former should stand as a correct interpretation of the laws of this state.

The judgment of the district court is affirmed.

PORTER, GRAVES, JJ., concurring.

BURCH, J. (concurring specially) : In my judgment the syllabus of the opinion written by Mr. Justice Smith clearly and accurately states the law. But the argument in support of the conclusions reached appears to me to be unduly pressed against the case of *Busenbark v. Busenbark*, 33 Kan. 572, 7 Pac. 245, and its congeners. If it were proposed to do so I would not agree that they may be overruled.

The premise of the dissenting opinion of Mr. Justice Greene is antagonistic to the decisions holding that a mortgagee may take a tax deed of the mortgaged premises. A mortgagee has a very large and substantial present property interest in the land covered by the mortgage. He may prevent waste and the like. He may redeem from taxes; and his interest may ultimately extinguish all the title of the mortgagor; still, he may take a tax deed, and I am not in favor of overruling the decisions of this court to that effect.

The syllabus of the case of *Steffins v. Stewart*, 53 Kan. 92, 36 Pac. 55, tells what was there decided, and reads as follows:

"A wife has no such interest in the lands of her husband, other than the homestead, as will support an action by her alone, in her own name, to enjoin the collection of special taxes assessed against such lands."

In the opinion the point at issue was stated thus:

"The question we are now called upon to decide is, whether Catherine Stewart *has such interest in the lands of her husband* as will enable her to maintain this action." (Page 96.)

The circumstance of former litigation by the husband concerning the same matter is not noted in these quotations. It was not the controlling fact in the case at all, and was referred to merely to illustrate the far-reaching consequences of conceding to the wife anything beyond her naked statutory right. I think the case is an authority against the position taken in the dissenting opinion, and am not in favor of weakening its force.

One source of the confusion attending discussions of this subject is the employment of names to designate an unnamed thing. The statute creates and defines the relation of a married woman to her husband's land other than the homestead. Whenever an attempt is made to speak of that relation familiar law words are used—"right," "interest," "property," "estate," and the like—every one of which contains implications not warranted by the statute. Then arguments are made from the implications, and so the effect of the statute may be magnified or minimized. In *Warner v. Broquet,* 54 Kan. 649, 39 Pac. 228, the subject was further complicated by viewing it in the light of obsolete law concerning the marriage relation.

I am willing to say, without naming it, that the statutory relation of a married woman to her husband's land other than the homestead is such that she is not prohibited from taking a tax deed of it. But if that relation should be wrongfully invaded, as in the Busenbark case, the courts should, upon her application, duly protect it.

MASON, J. (concurring specially) : The reasoning of the opinions of Mr. Justice Smith and Mr. Justice Burch is to me convincing that a wife is not disqualified to acquire a tax title to her husband's land, by whatever name her rights with respect to it may be described, and I therefore think, as suggested in the latter, that it is unnecessary to consider whether or not such rights amount to what may technically be called an interest.

GREENE, J. (dissenting) : I cannot assent to the conclusion arrived at by the majority of the court in this case. That we may understand the question to be decided, let us state the facts upon which it arises. J. W. Fike, Henry Fike and Anna Fike were brothers and sister, and tenants in common of the land in controversy. None of them was ever in Kansas. While it was thus owned the land was sold for taxes. Before a tax deed had matured Katie M. Fike, the wife of J. W. Fike, purchased the tax-sale certificate with her own separate funds and caused it to be assigned to her. Afterward, and at the proper time, she procured a tax deed, which she recorded more than five years before the present suit was commenced. Subsequently to the recording of the tax deed she conveyed the land by warranty deed to the defendant. After such conveyance Henry Fike and Anna Fike conveyed by quitclaim deed, each an undivided one-third interest in the land, to Paul R. Nagle, the plaintiff in error. Nagle commenced this suit to partition the land, claiming to be the owner of an undivided two-thirds interest by reason of his deeds from Henry and Anna Fike. The defendant was in possession, and pleaded the tax title to Katie M. Fike and the warranty deed from Katie M. Fike to himself as a complete title to the entire tract of land. The case finally turned upon the question whether Katie M. Fike, the wife of J. W. Fike, one of the tenants in common, could acquire a tax title to land in which her husband was an owner of an undivided

one-third interest as tenant in common, and the answer to this question depends upon whether a wife has a present property interest in the land of her husband, other than the homestead, situated in Kansas. This question is answered by the majority in the negative, and consequently it is held that one of the spouses may acquire a tax title to the land of the other, situated in Kansas, provided the tax-title holder has used his or her own money in the purchase thereof. From this conclusion I dissent, and prefer to adhere to the well-settled law of the state that a wife has a present existing property interest in all lands belonging to her husband situated in Kansas.

A very considerable portion of the opinion is devoted to the discussion of the rights of married women in Kansas. The right of a married woman to invest her money in property or business independently and apart from the control of her husband does not arise in this suit. It is not decisive of any question in this controversy. Under the laws of Kansas a married woman may sell and convey her real and personal property, and enter into any contract with reference thereto, in the same manner and to the same extent and with like effect as a married man may in relation to his real or personal property. Whether either has a present property interest in the lands of the other situated in Kansas, other than the homestead, is an entirely different and independent question. It is not deniable that where two or more persons are united in interest in real estate, irrespective of the nature, quality or extent of the respective interests, neither can acquire a tax title thereto against the other. It is the *unity of interest* in the subject of taxation that deprives one of the spouses from acquiring a tax title to lands belonging to the other, and not the *unity of persons*.

The question whether a wife has a present property interest in the real estate of her husband was first presented to this court in *Busenbark v. Busenbark*, 33

Kan. 572, 7 Pac. 245. That was a case where the wife sued for a divorce on the grounds of extreme cruelty and gross neglect of duty. She also alleged that her husband had fraudulently and collusively permitted two of his children by a former wife to procure a judgment against him in a large amount, upon which an execution had been issued under which such judgment creditors were attempting to sell a large amount of her husband's lands, other than their homestead, and thus defraud her of her interest therein, and prayed for an injunction to restrain the commission of such acts. A temporary injunction was granted. The husband answered denying the fraudulent intent, and also asked for a divorce. The judgment creditors also answered. Upon a final hearing the trial court made the injunction perpetual. It clearly appeared that the husband had sufficient other personal and real property to provide for himself and wife. The injunction was granted upon the theory that a wife has a present property interest in all the lands belonging to her husband situated in Kansas which she may protect and preserve by an appropriate action. It was not upon the theory, as suggested in the opinion of the majority, that "upon granting a divorce to the wife it is by statute made the duty of the court to award to the wife all of her separate property, and the court may further award her such portion of the husband's property or may award her such sum in money, as alimony, as seems equitable."

There was no divorce granted in that case, nor were any lands set apart to the wife or any award of money made. The possession and use of the homestead were awarded to her, and a few articles of personal property; but the entire real estate was not apportioned, but was cleared of the fraudulent judgment, and the wife's interest thereby preserved. The defendants prosecuted error to this court, and the question decided was that a wife had a present property interest in all lands owned by her husband situated in Kansas. In

the opinion is found the following language by Mr. Chief Justice Horton, speaking for the court:

"We now go further, and declare that although the wife's right and interest in the real estate of her husband not occupied as a homestead is inchoate and uncertain, yet it possesses the element of property to such a degree that she may maintain an action during the life of her husband for its protection, and for relief from fraudulent alienation by her husband." (Page 577.)

The same question was again presented to this court in *Munger v. Baldridge*, 41 Kan. 236, 21 Pac. 159, 13 Am. St. Rep. 273. The Busenbark case was reviewed and the court, speaking through the present chief justice, used the following language:

"The interest of the wife in the real estate of her husband during marriage is a contingent one, it is true, but it is unquestionably property, and no reason has been advanced why she may not empower the husband to act for her and in conjunction with himself convey it away. In *Busenbark v. Busenbark*, 33 Kan. 572, 7 Pac. 245, the nature of this interest was considered, and it was determined that while it was inchoate and uncertain it still possessed the elements of property which may be in connection with the husband the subject of contract and bargain, and was of such a character that the wife might during marriage maintain an action for its protection and for relief from fraudulent alienation by her husband. That it is an existing interest, and one which may be the subject of conveyance by the wife during marriage, is expressly recognized by the statute defining the same, as follows:" (Page 243.)

The precise question involved in this case was passed upon in *Warner v. Broquet*, 54 Kan. 649, 39 Pac. 228, where it was held that both husband and wife have an interest either direct or indirect in each other's real estate, and in passing upon the question the court used the following language:

"These interests and the mutual confidences which ought to exist between husband and wife forbid either

from obtaining a tax title upon the real estate of the other." (Page 650.)

For twenty years the doctrine that a wife has a present property interest in all real estate belonging to her husband situated in Kansas has been adhered to both by the bench and the bar, and property rights have been settled both in and out of courts upon the presumption that such was the settled law of the state. The majority opinion tells us, however, that the reasoning by which the courts reached this conclusion was fallacious. And in attempting to show the fallacious reasoning which led this court in the Busenbark, Munger and Broquet cases to conclude that a married woman had a present interest in the lands of her husband situated in Kansas, the following statute is quoted:

"One-half in value of all the real estate in which the husband, at any time during the marriage, had a legal or equitable interest, which has not been sold on execution or other judicial sale, and not necessary for the payment of debts, and of which the wife has made no conveyance, shall, under the direction of the probate court, be set apart by the executor as her property, in fee simple, upon the death of the husband, if she survives him; provided, that the wife shall not be entitled to any interest, under the provisions of this section, in any land to which the husband has made a conveyance, when the wife, at the time of the conveyance, is not or never has been a resident of this state." (Gen. Stat. 1901, § 2510.)

And then it is said: "At most this statute creates an interest in the husband's real estate which attaches, not during his lifetime, but upon his death." The confusion which is discernible throughout the opinion— that an interest in lands and an estate in lands are synonymous terms—stands out prominently in this quotation. This statute creates a present interest in the wife in lands owned by the husband—not an estate —which interest ripens into an estate only upon the death of the husband.

Neither J. W. Fike nor his wife had ever been a resident of the state. It is therefore held that the rule for

which I contend cannot apply in this case because of the proviso in the section. This proviso was intended only to deprive the wife from claiming an interest in lands which had been conveyed by her husband before she became a resident of the state. It was enacted to protect innocent grantees of land, and, as held in *Buffington v. Grosvenor,* 46 Kan. 730, 27 Pac. 137, 13 L. R. A. 282, is only a rule of conveyancing. The proviso does not discriminate against the non-resident wife. Her interest in the lands of her husband situated in Kansas is as great as if she actually resided in the state, and upon his death her estate in lands of which he died seized is the same as if she had been an actual resident, subject to all the conditions imposed by the statute upon resident wives or widows, with one addition, namely, that the husband has not conveyed it before his death; and, as suggested, this additional condition was imposed to protect innocent purchasers, and not to discriminate against the non-resident wife or widow.

The opinion in *Steffins v. Stewart,* 53 Kan. 92, 36 Pac. 55, may appear upon a cursory examination so to minimize the interest of the wife in the real estate of the husband as to be antagonistic to the principle for which I contend. But upon a closer examination it will be discovered that such is not the case. In that case the husband, who was the owner of the land, had unsuccessfully litigated the right of the city to levy a special assessment upon his land, and, after a final judgment against him, his wife commenced her action to relitigate the same question. This right was denied her, not because she did not have an interest, but because she had no such separate and independent interest in the real estate of her husband that she could maintain a separate action in her own name after the question involved had been litigated to a final determination by, and in the name of, her husband. This is in line with all the authorities. The interest of the wife in the real estate of her husband is a joint interest with

his, and not separable from and independent of his; and it is only in cases where, because of neglect or refusal on the part of the husband to perform some act or duty the neglect or non-performance of which would entirely defeat her interest, and in cases of fraudulent conduct of the husband detrimental to or destructive of her interests, that the courts recognize the right of the wife to her action. I insist that the wife has a property interest in all the lands of her husband, jointly with him; that the husband has a joint property interest in the lands belonging to the wife; and that therefore neither can acquire a tax title to the lands of the other.

Mrs. Katie M. Fike being incapable of acquiring a tax title to the lands, the deed was void, and recording it did not start the statute of limitation. (*Carithers v. Weaver*, 7 Kan. 110.) The judgment of the lower court should be reversed.

I am authorized to say that Mr. Chief Justice Johnston joins me in this dissent.

---

OPINION ON REHEARING.
(88 Pac. 969.)
SYLLABUS BY THE COURT.

1. TAX DEED—*Recorded Five Years—Consideration.* Where two tracts of land lying contiguous and under the same ownership are separately taxed in the same amount for a certain year, are sold for the non-payment of such taxes, and are thereafter deeded to the purchaser in consideration of such taxes and the subsequent taxes for the three intervening years, and the deed recites as the consideration therefor, not the separate amount against each tract but the total amount of taxes, interest and costs, the deed, in an action commenced more than five years after the recording thereof, will not be held void as not complying with the requirements of section 7677 of the General Statutes of 1901.

2. —— *Presumption.* In such a case, to support the deed it will be presumed either that the two tracts continued to be

separately taxed in equal amounts, or, subsequent to the sale, were taxed together as one tract; in either of which cases the consideration for the conveyance is one-half the total consideration.

The opinion of the court was delivered by

SMITH, J.: Incident to the conflicting views of the members of the court upon the question whether Katie M. Fike was disqualified to take title to the land in question by reason of being the wife of one cotenant owner thereof at the time of the issuance of the tax deed, the question of the validity of the tax deed upon its face was overlooked. This question of the validity of the deed upon its face was not argued at any considerable length, yet it was fairly presented for decision by the petition in error and the original brief of plaintiff in error. It is more strongly urged on the rehearing.

Reaffirming the former decision upon all the questions therein decided, we proceed to the question of the validity of the tax deed upon its face. The tax deed purports to convey two contiguous quarter-sections of land, lying in the same section, which were separately sold according to law at a regular tax sale for the unpaid taxes of 1888, amounting to $22.70 on each quarter-section, being bid in for the county. By successive assignments of the tax-sale certificate the same became the property of Katie M. Fike, to whom the tax deed was issued, and she or her assignors paid the taxes for the years 1889, 1890, and 1891, which the deed recites amounted to $101.90, with costs and interest. The granting clause of the deed recites the consideration for the transfer of the two tracts as $234.50, but does not specifically recite the separate consideration for each tract, and in this, it is claimed, lies a fatal defect.

The statute provides that where more than one tract or parcel of land is conveyed by one tax deed the deed shall state the consideration for which each tract is conveyed. (Gen. Stat. 1901, § 7677.) If the deed shows

on its face that it does not fairly meet this requirement it must be held illegal and void, although it had been of record more than five years before the commencement of this suit. (*Gibson v. Kueffer,* 69 Kan. 534, 77 Pac. 282.) If, however, the deed contains recitals from which, by computation or fair inference, the consideration for the conveyance of the separate tracts can be ascertained, it is a sufficient compliance with the statute. (*Penrose v. Cooper,* 71 Kan. 725, 84 Pac. 115; *Ham v. Booth,* 72 Kan. 429, 83 Pac. 24; *Kennedy v. Scott,* 72 Kan. 359, 83 Pac. 971; *Cross v. Herman, post; Fullington v. Jobling,* which will be found in 75 Kan.)

The two tracts were taxed separately for the year 1888, but for the same amount. If they continued to be so taxed for the years 1889, 1890, and 1891, and the deed does not show that they were not so taxed, the consideration for the conveyance of each tract could be ascertained by simple division.

Again, the evidence shows that the two tracts were under one ownership during the years 1889 to 1891, inclusive, and, being contiguous, were assessable as one tract. The deed contains nothing to the contrary, and if the tracts were so assessed and taxed during these years the recital of the consideration for the conveyance could have been made in no other way than it was made.

Under the authorities cited, *supra,* presumptions and inferences are not to be indulged to defeat, but are to be indulged to sustain, the validity of a tax deed after it has been of record five years.

The judgment of the district court is reaffirmed.

BURCH, MASON, PORTER, GRAVES, JJ., concurring.

GREENE, J. (dissenting) : I dissent from the opinion in this case upon the rehearing.

In the first opinion it is said that the interest of a wife in the real estate of her husband is "quite analogous to the interest of an heir." From this false premise it was easy to reach the conclusion that the wife had no

such interest in the real estate of her husband as would prohibit her from acquiring a tax title thereto. The right of dower was a present property interest of the wife in the real estate of the husband. It was not derived by descent and did not depend upon the date of the husband's death. It became complete upon a concurrence of seizin in the husband and the marriage relation of the parties, and was held by the wife wholly independent of the husband. It is said in Park on Dower to be "a right attaching by implication of law, which, although it may never be called into effect (as when the wife dies in the lifetime of the husband), yet from the moment the fact of marriage and of seizin have concurred it is so fixed upon the land as to become a title paramount to that of any person claiming under the husband by any subsequent act. After this right has once attached, it is held by the wife entirely independent of her husband, and it cannot be affected by any act or omission on his part." (Page 237.) This was quoted approvingly in *Lucas v. White*, 120 Iowa, 735, 95 N. W. 209, 98 Am. St. Rep. 380. In *Cunningham v. Shannon*, 4 Rich. Eq. (S. C.) 135, 140, it was said:

"Dower is a right which, inchoate during the coverture, becomes absolutely vested in the wife as an estate on the death of her husband; and is as much beyond his control or power of disposition as her own inheritance. It not being *his* to give, every devise which he makes of the land upon which the right of dower attaches is presumed to be given subject to the legal estate, unless the contrary appears on the face of the will, in express words, or by the strongest kind of implication."

The right of dower was not abolished in Kansas for the purpose of creating a lesser interest in the wife in the real estate of her husband, but to create a greater one, consequently the statute gave her "one-half in value of all the real estate in which the husband, at any time during the marriage, had a legal or equitable interest." (Gen. Stat. 1901, § 2510.) This interest is

not an inheritance, depending for its inception upon the death of the husband, but springs into existence by operation of law as soon as seizin in the husband and the marriage relation concur. It is held by the wife independent of any act of the husband. He cannot convey, encumber, or devise it. Such an interest is in no way analogous to an estate of inheritance.

JOHNSTON, C. J., joins in this dissent.