No. 22,635.

KATE PURL, *Appellant,* v. THOMAS C. PURL et al., *Appellees.*

### SYLLABUS BY THE COURT.

1. TAX TITLE—*Wife Disqualified to Acquire Tax Title to Husband's Land.* Where a husband and wife occupy a farm in which he has a life estate, with remainder to his children, and the wife shares in its management and proceeds, keeping stock of her own thereon, she is disqualified to acquire a tax title thereto based upon taxes which accrued while these conditions existed, and paid for out of a fund derived from its operation.

2. SAME—*Evidence—Findings.* The evidence is held to support the findings.

Appeal from Shawnee district court, division No. 2; GEORGE H. WHITCOMB, judge. Opinion filed July 10, 1920. Affirmed.

*W. F. Schoch, Edwin A. Austin, Otis E. Hungate,* and *Paul H. Heinz,* all of Topeka, for the appellant.

*Eugene S. Quinton, John G. Waters, John C. Waters, J. J. Schenck,* and *W. E. Atchison,* all of Topeka, for the appellees.

The opinion of the court was delivered by

MASON, J.: In 1891, Fillmore Purl through a will acquired a life estate, with remainder to his children, in a Kansas farm then occupied by himself and family, consisting of a wife and (for a part of the time) their children, this occupancy continuing until 1906, after which the place was rented. On July 15, 1918, he died, and the next day his widow, Kate Purl, brought this action against their children, claiming full title to the farm under tax deeds issued to her in 1899, based upon the taxes of 1895, 1896, and 1897. She was denied relief, and appeals.

Findings were made to this effect: When Kate Purl came to Kansas she brought with her two mares which were taken upon the farm. From these horses, colts and mules were raised,

which were kept there. She also acquired other property from the products of the farm. From 1891 to 1899 she returned for taxation as her property, horses, mules, cows, hogs and chickens which were kept and cared for there, her husband returning no personal property for taxation during these years. He was away from home quite a good deal during the time, and when he was at home he and his wife were in joint charge and control of the farm; when he was away she exercised complete control. She shared with him in the proceeds derived from the farm. She looked after the payment of taxes upon the farm for 1891 and subsequent years, and paid them out of the proceeds derived from the farm, taking receipts for the years 1891, 1893, and 1894 in her own name. The land was sold for taxes in September, 1893, and she redeemed it from this sale in her own name two months later. In 1896 the land was sold for the taxes of 1895, and the taxes for 1896 and 1897 were indorsed on the certificates. In February, 1899, she took an assignment of the certificates, and upon these, deeds were issued to her in September, 1899. The subsequent taxes were paid in her name. The money which went to purchase the tax-sale certificates was derived from the property of Fillmore Purl and Kate Purl, and from their labor in connection with the farm, and personal property.

One contention made by the defendants is that a wife cannot under any circumstances acquire a tax title to her husband's property. In *Broquet v. Warner,* 43 Kan. 48, 22 Pac. 1004, a tax title taken by a husband upon his wife's land was upheld, stress being laid upon the fact that neither had been in possession. On a subsequent appeal in the same case it was said that there was sufficient evidence to show actual possession of the land by the husband at the date of the tax sale, but that the earlier decision would be overruled and the deed held void on the ground that, irrespective of possession, a husband cannot obtain a valid tax title to his wife's property. (*Warner v. Broquet,* 54 Kan. 649, 39 Pac. 228.) Still later the whole question was reëxamined in a case where neither spouse had ever resided in Kansas, the court concluding that the mere relation of husband and wife does not prevent the acquisition by one of them of a tax title to the land of the other, and overruling the decision in the 54th Kansas so far as it overruled

that in the 43d. (*Nagle v. Tieperman,* 74 Kan. 32, 45, 53, 85 Pac. 941, 88 Pac. 969.) In *Croner v. Keefer,* 103 Kan. 204, 173 Pac. 282, it was held that the husband under the facts there presented was disabled to acquire a tax title to land standing in the name of his wife. He had owned the property himself until it had been sold for taxes and bid in by the county, and he had executed a deed to his wife after such sale. This obviously disqualified him to take an assignment of the certificate from the county, and subsequent unpaid taxes were annually added to the lien arising from that sale, and there could be no new sale until a redemption therefrom. (Gen. Stat. 1915, § 11426.) To the decision on this ground the court added a citation of *Warner v. Broquet,* 54 Kan. 649, 39 Pac. 228, with a statement of its effect. The doctrine of that case was not necessary to the decision, and was not reëstablished by it. In *Peck v. Ayres,* 79 Kan. 457, 100 Pac. 283, the two Warner-Broquet cases were cited without reference being made to *Nagle v. Tieperman,* and both were in a sense in point, because the tax deed there taken by the husband to his wife's land was bad under either rule, he having shared the possession with her and enjoyed the rents and profits. In the present case likewise the question whether a disability of one spouse to acquire a tax title to land of the other follows from the mere fact of their relationship is not necessarily involved. Under the findings, the attempt of Kate Purl to buy the tax-sale certificates amounted to a redemption of the property because when the taxes accrued she was living upon the farm with her husband, operating it jointly with him, using it in part for her own individual benefit, deriving a revenue from it, and paying for the certificates, in part at least, with money obtained therefrom. The suggestion is made that if the farm had been rented the tenant would have been at liberty to buy it at a tax sale, and that inasmuch as Fillmore Purl in pursuance of his legal obligation furnished it to his wife as a place of residence her situation is not essentially different. We do not think the analogy close. The occupancy was that of the family, of the husband and wife jointly, and notwithstanding the legal right of each to transact business separately, we hold that they were equally incompetent to divest the title of the remaindermen by the acquisition of a tax deed.

2. The findings of fact are not directly challenged in the

Purl v. Purl.

plaintiff's brief, but complaint is made of the admission of the testimony of one witness on the ground that it related to a privileged communication and was otherwise incompetent. Assuming that this evidence should have been excluded, the judgment should nevertheless be affirmed unless without it the findings would lack support, for the case was tried without a jury, and, in the absence of an affirmative showing to the contrary, it must be presumed that the court was influenced only by competent evidence. (*McCready v. Crane*, 74 Kan. 710, 88 Pac. 748.) Leaving out of account the testimony of the witness referred to, and bearing in mind that the court obviously discredited certain statements of the plaintiff, we regard the findings as sufficiently sustained. The plaintiff testified that she "carried the pocket book" all the time and had stock on the farm; that she kept the money for which things were sold on the farm; and that her husband didn't run the farm half the time—that he was away from it frequently. Any of the specific findings concerning which there was no direct evidence related to conclusions fairly inferable from the circumstances shown. For instance, no witness testified that the money paid for the tax certificates was derived from the property of Fillmore and Kate Purl and from their labor in connection with the farm and personal property. But this was a legitimate inference from the manner in which it was shown the business had been conducted. Account must be taken of the difficulty in establishing such matters—involving the tracing of family expenditures—by positive testimony, a recognition of which difficulty has doubtless fostered the view that one spouse should under all conditions be barred from acquiring a tax title to the other's property.

The judgment is affirmed.