PETER KEENAN, Plaintiff in Error.

*vs.*

THE STATE OF WISCONSIN, Defendant in Error.

ERROR TO THE GRANT CIRCUIT COURT.

Confessions fully and voluntarily made by a prisoner charged with crime, though under arrest, are admissible in evidence.

Persons present at the scene of a homicide or felony, may arrest the offender and hold him in custody without a warrant from a magistrate.

To disqualify a juror on the ground of alienage, the best evidence which the nature of the case admits, must be produced. It is not sufficient that the records of the courts of the county where he resides, have been examined, and no record of naturalization has been found.

After conviction, the presumption is that the jurors were competent, and satisfactory evidence must be produced to establish the contrary, before the verdict will be disturbed for that cause.

On the trial of capital offences the better rule is to hold, in case of separation of the jurors during the trial, that unless it appears that the separation of the jurors was not followed by improper conduct on their part, nor by any circumstance calculated to exert an improper influence on the verdict, the verdict should be set aside in case of conviction.

In such case of separation, it is incumbent on the prosecution to show that the separation worked no harm to the defendant.

In order to reduce the offence of inexcusable or unjustifiable homicide to manslaughter in fourth degree, under section 20 of chap. 133 of the Rev. Stat., the involuntary killing must be without a cruel or unusual weapon, and without any cruel or unusal means.

Sections 12, 14 and 20 of chapter 133 of the Revised Statutes considered.

The plaintiff in error was indicted, at the April Term, 1857, of the Grant circuit court for murder in the first degree, of one Peter Fagan, to which he pleaded not guilty. The venue was changed, on the application of the defendant, *to* Iowa county, where the cause was tried at the March Term, 1858,

and the defendant found guilty of manslaughter in the first degree. Several exceptions were taken on the trial, which are made the subject of review here.

From the bill of exceptions it appears that on the evening of the 22d of December, 1856, the defendant, the deceased and others were at the house of one Runey, in Grant county, that the defendant and deceased began to quarrel, and showed signs of fighting, and were told to be quiet or leave the house. They went out, and Keenan was seen to strike Fagan once or twice; they struggled together, rolled over, Keenan being uppermost. Keenan was taken off, and Fagan was carried into the house, bleeding. Seven wounds were found on him, two on the inside of the left thigh, one under the left short rib, one on the front of left breast, two on the right side, and one on the back of the neck to the left. Keenan said he killed Fagan with a knife. Fagan died in a very few moments after he was taken into the house. Keenan soon left the house, but was followed, overtaken, arrested and detained in custody by those present at the time of the homicide. His hands and feet were tied, and he was roughly treated. James Humphrey testified, that on the next day at noon he was at the house where lay the body of the deceased, and where was also the defendant. There were many there, and much confusion. Keenan, the defendant, was tied. Witness asked him what he had been doing. He cried and said, "I did not mean to kill him, I only intended to cut him." Witness asked him how it commenced. He said, "some words passed, and Fagan asked him to go out of doors; had no idea of killing him, and was sorry for it. Keenan was badly tied; his hands swollen, and witness loosened his bands. There was some threatening by Runey, and the defendant was alarmed. The defendant's counsel objected to the evidence as to the confession testified to by this witness, but the objection was overruled, and exception taken.

There was a mass of other evidence incorporated in the bill of exceptions, but enough has been stated to elucidate the points of law raised in the case.

After the evidence was closed, the defendant by his counsel asked the court to instruct the jury:

1. " That homicide is justifiable when committed in the lawful defence of the person, where there shall be a reasonable ground to apprehend a design to do some great personal injury, and there shall be a reasonable ground to apprehend that there is imminent danger of such design being accomplished;" which instruction was refused, and the defendant excepted.

2. The counsel for the defendant further asked the court to instruct the jury: " That the involuntary killing of another by any weapon in the heat of passion, in any case other than such as are, in chapter 133 of the revised statutes, declared to be excusable homicide, is deemed manslaughter in the fourth degree; and if from the evidence the jury find that the killing in this case was involuntarily committed by the defendant, by a knife, in the heat of passion, and not excusable homicide, the crime is manslaughter in the fourth degree;" which was refused, and the defendant excepted.

It is unnecessary to state any other or further matters charged by the court. The defendant was convicted of manslaughter in the first degree.

Afterwards, the defendant's counsel moved for a new trial, for the following reasons:

1. The verdict is contrary to law and evidence in the case.

2. The court erred in its instructions to the jury.

3. One of the jurors who tried this case was incompetent in law to act as a juror, he, Patrick McGowen being then and there an unnaturalized alien, which was unknown to this defendant and his counsel until after a portion of the testimony in the case had been submitted.

4. Certain jurors of said jury were permitted to absent themselves, and be separated from their fellows during the pendency of said trial.

5. For other reasons apparent in the record of said case.

This motion was founded upon affidavits, the substance of which is stated in the opinion of the court. The motion was overruled, and the defendant excepted; and afterwards was sentenced to seven years imprisonment in the State prison.

*Samuel Crawford,* for the plaintiff in error.

1. The court erred in admitting the testimony of Humphrey as to the defendant's admission while under *duress,* and in refusing to exclude such evidence from the jury. *Schœffler vs. The State,* 3 Wis., 843, 1 Greenl. Ev. p. 254–262, 2 Russ. on Cr., 826, 2 Hale, 285.

2. The court erred in refusing the first instruction asked for by the defendant, R. S. Ch. 133, § 5.

3. The court erred in refusing the several instructions asked for by the defendant, R. S., ch. 133, § 20.

4. The court erred in denying a motion for a new trial.

1. The juror Patrick Gowen was not a competent juror, because he was not a citizen of the United States. *State vs. Schoemaker,* 5 Wis. 327 ; *Schœffler vs. The State,* 3 Wis, 828.

5. The separation of one or more of the jurors from their fellows during the trial, vitiates their verdict. Stephens Cr. L. 313, 6 T. R. 527, 24 State Tr. 413–417, 22 S. L. 313 ; How. St. Tr. 671, 11 id. 559–561.

*G. Bouck,* Att'y Gen'l for the State, cited Graham & W. on N. T. and note. 1 Cow., 221 and note, 1 Conn., 401, 11 Ohio, 472.

*By the Court*, Whiton, C. J.  It appears that the plaintiff in error was indicted for murder, and on the trial of the indictment convicted of manslaughter in the first degree.

The errors relied upon by him to reverse the judgment, are, 1st, the admission of proof of his confessions while under duress; 2d, that one of the jurors who sat upon the jury was incompetent; 3d, that two of the jurors separated from their fellows during the trial for the purpose of attending to their private business; 4th, that the judge before whom the case was tried, erred in the instructions which he gave the jury upon the subject of the statute concerning homicide.

We do not see as the judge committed any error in admitting proofs of the confessions.  It does not appear that any inducement was held out to the plaintiff in error to make a confession, nor that any threats were made to extort one from him.

On the contrary, it appears that the confessions were made freely and voluntarily.  Confessions made under such circumstances are by all the authorities deemed admissible.  Nor do we think the fact that the plaintiff in error had been arrested constituted such a duress as ought to exclude the confessions.  It does not appear that his arrest was unlawful; although it was without the authority of a warrant issued by a magistrate; yet it appears that he was taken into custody by those who were present at the scene of the homicide, and we cannot decide that this act was unlawful.  If the plaintiff in error was guilty, the arrest was lawful and proper, without a warrant.

But whether the arrest was made by lawful authority or not, as it does not appear that any attempt was made to extort a confession from the plaintiff in error, we do not see but that the testimony was rightly admitted.  It is enough that the confession was made freely and voluntarily.

In regard to the alleged incompetency of one of the jurors who sat upon the jury which tried the plaintiff in error, we have only to say that we do not think that the fact relied upon to show the incompetency of the juror was satisfactorily established. The fact relied upon was alienage. It was contended that Patrick McGowen, one of the jurors, was not a citizen of the United States.

The affidavits which were taken to establish that fact, show that the juror stated that his father emigrated from Ireland when he, the juror, was about three years of age; that the juror had never complied with the laws of Congress upon the subject of the naturalization of persons of foreign birth, but that he had understood that his father became a citizen of the United States by naturalization, when he, the juror, was about sixteen years of age. One of the affiants deposed that he had examined the records of the late district court for the county of Iowa, in the territory of Wisconsin, and of the circuit court for the same county since Wisconsin became a State, from the year 1837 to the time of taking the affidavit, and could find no evidence therein that Edward McGowen, the father of the juror, ever applied for or obtained final naturalization in said courts.

It further appeared that the juror, at the time of the trial, was about twenty-three years of age. It was admitted by the counsel for the plaintiff in error, that if the father did obtain naturalization when the son was about sixteen years of age, the son became a citizen of the United States without any further act or ceremony whatsoever. As we have stated above, we do not think this testimony sufficient to establish the alienage of the juror.

The testimony of the father might have been obtained as to the fact of his naturalization, or an authenticated copy of the record of the court before which he obtained his naturalization.

The presumption is that the juror was competent, and it must appear by satisfactory proof, that he was incompetent, before we can be called upon to reverse the judgment for that reason, and we do not think that the testimony offered was sufficient.

It appears that one of the facts upon which the counsel for plaintiff in error founded his motion for a new trial in the court below, was the separation of two of the jurors from their fellows, during the progress of the trial. The existence of this fact was established by affidavit. It appears that one of the jurors was permitted to go to his house and remain one night, and that another went to the railroad depot on business, and it does not appear whether this separation was with or without the consent of the circuit judge. It is contended by the plaintiff in error, that this separation of the jurors vitiated the verdict. The authorities upon the subject are very conflicting. (See Stevens Crim. Law, 313, 6 T. Rep., 527, 19; How. Set. Trials, 671, 11 id., 559, 561; 1 Conn., R., 221, note id., 401; 11 Ohio, 472, 15 id., 72; 7 N. H. R., 287.) But we think that in trials for capital offences, the better rule is, to hold that unless it appears that the separation of the jurors was not followed by improper conduct on their part, nor by any circumstance calculated to exert an improper influence on the verdict, the verdict should be set aside in case of a conviction. (*State vs, Prescott*, 7 N. H. R., 2, 7.) In this case there is nothing to show what the conduct of the jurors was, while they were separated from their fellows, and we think it was incumbent on the prosecution to show that the separation worked no harm to the plaintiff in error. We must, therefore, for this reason, order a new trial.

The only remaining question to be considered, is in regard to the instructions given by the judge to the jury in relation to our statute defining homicide. (Rev. Stat., Chap. 164.) We are of opinion that the ruling of the judge upon that

subject was correct. It appears from the bill of exceptions that he was requested by the counsel for the plaintiff in error to instruct the jury " that under section twenty of chapter one hundred and thirty-three of the revised statutes, the involuntary killing of another by any weapon, in the heat of passion, in any cases other than such as are, in said chapter one hundred and thirty-three, declared to be excusable homicide, is deemed manslaughter in the fourth degree, and if the jury find the killing in this case was involuntarily committed by the defendant, by a knife, in the heat of passion, and not excusable homicide, the crime is manslaughter in the fourth degree." The judge refused this instruction, but instructed the jury in the language of the section, which is as follows: " The involuntary killing of another, by any weapon, or by any means, neither cruel nor unusual, in the heat of passion, in any cases other than such as are herein declared to be excusable homicide, shall be deemed manslaughter in the fourth degree." It is argued by the counsel for the plaintiff in error, that the judge committed an error in refusing the instruction which he requested him to give. But as we have before stated, we think the ruling of the judge was correct. It will be seen that the phraseology of the section does not require the construction contended for by the counsel for the plaintiff in error, while such a construction would have the effect to render inoperative sections twelve and fourteen of the same chapter. Section twelve provides that the killing of a human being without a design to effect death, in the heat of passion, *but in a cruel and unusual manner,* unless it be committed under such circumstances as to constitute excusable or justifiable homicide, shall be deemed manslaughter in the second degree. Section fourteen provides that " the killing of another in the heat of passion, without a design to effect death, *by a dangerous weapon,* in any case except such wherein the killing of another is herein declared to be

justifiable or excusable, shall be deemed manslaughter in the *third* degree."

We are satisfied, that in order to reduce the offence to manslaughter in the fourth degree, under section 20 above quoted, the involuntary killing must be without a cruel or unusual weapon, and without any cruel or unusual means.

There were one or two other matters alluded to at the argument, but we do not think it necessary to speak of them particularly. We are satisfied that the only error presented by the record is the one above specified, and for that the judgment must be reversed and a new trial granted.