# MILLER vs. THE STATE.

CRIMINAL LAW.  *Indictment for murder ; separate counts ; admissible variations — Conspiracy of husband and wife to rob ; murder committed by husband in executing the conspiracy — Evidence of guilt : Confessions of accused — Declarations of murdered person.*

1. An indictment for murder contained five counts — the first three charging the defendant with inflicting the mortal blow with her own hand; and the last two, with being present and assisting her husband to commit the murder. The first count charges the murder to have been committed with a soldering iron ; the second, with a knife ; the third, with both instruments. *Held,* that these were admissible variations in charging the same crime, to meet the possible proof; and the court did not err in refusing to require the prosecution to elect on which count it would proceed.

2. Confessions of the accused, voluntarily made, without any inducement in the nature of a promise or threat, are admissible in evidence.

3. Declarations of the murdered person, made " when he was at the point of death, and every hope of this world gone," as to the time, place and manner in which, and the person by whom, the fatal wound was given, are admissible in evidence, notwithstanding the provision in the bill of rights as to the right of an accused person " to meet the witnesses face to face."

4. If two persons conspire to commit a felony, and, while they are engaged in prosecuting that common design, one of them commits murder, the other is guilty of murder also.

5. Whether, where a wife conspires with her husband to commit a robbery, and, while both are so engaged, he commits a murder, she would be presumed to have acted under coercion, it was not necessary to determine in this case, there being evidence tending to rebut such a presumption, and the question of her voluntary action having been fairly submitted to the jury.

6. The court, on the trial of the wife in such a case, instructed the jury " that if defendant, without any fear or compulsion of any kind from her husband, agreed with him to go to the store of the deceased and rob it, the husband telling her, and she believing, that he did not intend to kill the deceased, but would do him no greater bodily harm than to knock him down and stun him, so that the store could be robbed ; and if she was present when her husband struck the fatal blow, but gave no intentional assistance to him — then, defendant and her husband being engaged in an attempt to perpetrate a robbery, the

jury would be justified in finding her guilty of murder in the third degree." It *seems* that this instruction was too favorable to the accused, and that she was chargeable (if she acted voluntarily throughout) with the same crime as the husband.

ERROR to the Circuit Court for *Crawford* County.

The plaintiff in error was indicted for murder. The allegations of the several counts in the indictment, and the charge of the court, are recited sufficiently in the opinion. Verdict, "Guilty of murder in the third degree." * The errors assigned are: 1. The refusal of the court to compel the district attorney to elect upon which count in the indictment he would proceed. 2. The admission of evidence against the accused generally upon all the counts. 3. The admission of the testimony of one Michael Menges, as to certain confessions of the accused. 4. The admission of evidence as to certain dying declarations of Emery Wright (the person murdered), "after it was proved that they were all made before his expected death, and when he had hopes of recovery, and were never again repeated by him." 5. Verdict contrary to law and evidence. 6. General verdict on inconsistent counts. 7. Erroneous instructions to the jury.

*M. M. Cothren*, for plaintiff in error. [No brief on file.]

The *Attorney General*, for the state, as to the admission of evidence, generally, under the indictment, cited Am. Cr. Law, 129, 423, 424, 428; *Ketchingman v. State*, 6 Wis. 426; *Newman v. State*, 14 id. 393. As to the admission of confessions, he cited *Keenan v. State*, 8 Wis. 132; *Schœffler v. State*, 3 id. 823. As to proof of dying declarations, he cited 5 Ohio, 340, 342; 2 Chand. 172; *Woodsides v. State*, 2 How. (Miss.) 655; *Campbell v. State*, 11 Ga. 353; *Hill v. Comm.*, 2 Grat. 594; *Montgomery v. State*, 11 Ohio, 424.

---

* R. S. ch. 164, § 2, declares that the killing of a human being, without the authority of law, " when perpetrated without any design to effect death, by a person engaged in the commission of any felony, shall be murder in the third degree."

COLE, J. We think there is no ground for saying that the court should have compelled the prosecution to elect upon which count it would proceed. The indictment consists of five counts. In the first three the defendant is charged with inflicting the mortal blow with her own hand; the first count charging the murder to have been committed with a soldering iron; the second by means of a dirk knife; and the third, by both of these instruments combined; while in the last two counts it is alleged that her husband, Daniel Miller, struck the mortal blow, and that the defendant was present aiding and assisting him to commit the murder. Still, all these counts relate to the killing of Emery Wright; but, as there might be some doubt as to whether the death was caused by wounds inflicted by the soldering iron, or by those inflicted by means of the dirk knife, and it was also uncertain whether the defendant herself inflicted the wounds, or was present aiding and abetting her husband in the commission of the murder, it was allowable to insert several counts in the indictment, solely for the purpose of meeting the evidence as it might transpire on the trial. But the charges all related essentially to the same transaction, to the same killing; and whether it should appear that the defendant gave the mortal blow or voluntarily aided and abetted her husband in giving it, was not material; since, if she was found guilty upon either count, it would be sufficient to support the indictment. But it was proper to insert these different counts to meet every possible state of the evidence adduced; and the defendant could not have been prejudiced by the refusal of the court to compel the prosecuting officer to elect on which count he would proceed. It was very clear that the offense with which the defendant was charged was the murder of Emery Wright, and none other. And there is as little ground for saying that the court erred in receiving evidence against the defendant generally,

upon all the counts in the indictment. For, as already observed, these various counts charged only one crime ; and whether 'the evidence showed that the defendant was the principal perpetrator, or voluntarily aided her husband in giving the mortal blow, is immaterial, since in either case it would, in law, be the murder of each.

Another objection taken is, that the court erred in permitting Michael Menges to testify as to the confessions of the accused. It does not, however, appear that there was "any inducement in the nature of a promise, or of a threat held out" by any one, to influence the defendant's mind in making these confessions ; but they were perfectly voluntary. Under such circumstances they are, by all the authorities, admissible in evidence. *Keenan v. State*, 8 Wis. 132 ; 1 Greenl. Ev. §§ 219, 220, 221, *et seq. ; Shœffler v. State*, 3 Wis. 824.

A further objection is, that the court improperly admitted the dying declarations of Emery Wright. These declarations were made by Mr. Wright soon after he received the fatal injury, while in the possession 'of his senses ; and they were " declarations made in extremity, when the party was at the point of death, and when every hope of this world was gone." They related to the time, place and manner the fatal wounds were inflicted upon him, and the persons by whom the wounds were given. That they were made by him under a sense of impending death, seems to us too plain for controversy. And they are admissible as the dying declarations of the deceased, if such declarations can, in any conceivable case, be admissible. But it is said, that, by the declaration of rights in our constitution, in all criminal prosecutions, the accused has secured to him the right "to meet the witnesses face to face," and that this provision excludes such dying declarations. The rule, however, was well settled before the adoption of our constitution, that the declarations of a dying per-

Miller vs. The State.

son were admissible in cases of homicide, "where the death of the deceased is the subject of the charge, and the circumstances of the death are the subject of the dying declarations;" and we have no idea that it was the object of this provision in the bill of rights to abrogate this rule of evidence. They were held to be admissible in the case of *The State v. Cameron*, 2 Chandler, 172, as well as in many other cases in our sister states, referred to upon the brief of the attorney general. But, without referring in detail to these numerous adjudications upon the question, we will merely say, that, in our opinion, the admission of the dying declarations as evidence was not, in any manner, repugnant to our bill of rights.

A number of exceptions are taken to the charge of the court; but we think there is nothing in the charge of which the defendant can complain. Upon one point it is certainly more favorable to her than perhaps the strict rules of law would allow. We refer to the portion of the charge where the jury were instructed that if the defendant, without any fear or compulsion of any kind from her husband, agreed with him to go to Mr. Wright's store and rob it, the husband telling her, and she believing, that he did not intend to kill Mr. Wright, but would do him no greater bodily harm than to knock him down and stun him, so that the store or strong box could be robbed; if she was present when her husband struck the fatal blow, but gave no intentional assistance to him — then, the defendant and her husband being engaged in an attempt to perpetrate a robbery (which is a felony), the jury would be justified in finding her guilty of murder in the third degree.

Now the law seems to be well settled, that if two or more persons conspire to commit a felony, and in the prosecution of that common design one of them commit murder, it is murder in all who enter into, or take part in, the execution of the common object and design for

which they combine together. See cases referred to in note 2, 1 Bishop's Crim. Law, section 435 (4th ed.); also, *The State v. Shelledy,* 8 Clarke (Iowa), 477; *Commonwealth v. Campbell,* 7 Allen, 541. This rule of criminal responsibility would be applicable to the defendant, unless it can be said that the defendant did not act freely in what she did, but was under the coercive influence of her husband. It is a principle of law, that whatever of a criminal nature the wife does in the presence of her husband, is presumed to be compelled by him. 1 Bishop's Crim. Law, sec. 452 (4th ed.). But, says this writer, "the proposition that coercion is presumed from the mere presence of the husband does not apply to certain crimes, by reason of their peculiar nature; either as showing so much malignity as to render it improbable a wife would be constrained by this mere presence, without the separate active operation of her own will, into the commission of them; or as, while of less magnitude, being in their character such as women are supposed peculiarly to participate in; so that in these cases something more is required than the mere presence to establish the coercion. Of the aggravated offenses are treason, probably murder, possibly robbery." Section 454. Whether, however, in the case of the wife joining with her husband in the commission of a robbery, she can be held to be within the excuse of compulsion, because the law intends that she has no will, it is not necessary now to determine. For whenever the wife is presumed to act under the husband's coercion, being in his presence, the presumption is only a *prima facie* one, to be rebutted by evidence. 1 Bishop's Cr. Law, sec. 455. And in this case the court seems to have fairly submitted to the jury the question, whether, in participating in the commission of the robbery, she acted through constraint; and the jury must have found, under the instructions given them, that she did not. They must have been satisfied from the proofs that

the defendant was not constrained by her husband to do what she did, but that she acted from her own free and uncontrolled will. It is, therefore, quite obvious that the error in the instruction, that the defendant, if a voluntary, active party in the commission of the robbery (Mr. Wright being killed by her husband in the furtherance of this common object), would only be guilty of murder in the third degree, was an error in her favor.

The other exceptions taken to the charge of the court appear to us so manifestly untenable, that we do not deem it necessary to notice them in detail.

*By the Court.*— The judgment of the circuit court is affirmed.