## King v. City of Owensboro.

(Decided February 10, 1920.)

### Appeal from Daviess Circuit Court.

1. Appeal and Error—Criminal Law—Evidence—Admissibility—Necessity of Objection.—On a prosecution for the sale of intoxicating liquor without a license, the alleged error of the trial court, in permitting only a partial copy of the license ordinance to be introduced in evidence, was not available on appeal, where the introduction of the ordinance was not objected to on that ground.

2. Appeal and Error—Criminal Law—Intoxicating Liquors—Sale Without License—Instruction—Error.—On a prosecution for the sale of intoxicating liquor without a license, an instruction authorizing conviction, if the jury believed from the evidence, to the exclusion of a reasonable doubt, that defendant, without a license so to do, "either by herself, or by or through any person connected with her, sold any beer to the witness, John Walt." though not technically correct, was not error, in view of the uncontradicted evidence that defendant herself sold beer to the prosecuting witness.

3. Husband and Wife—Liability of a Wife for Crime—Presumption of Coercion—Effect of Statute.—In view of the statute emancipating a married woman from the disability of coverture, there is no longer a presumption that a married woman who commits certain crimes conjointly with her husband, or in his presence, acts under his coercion.

FLOYD J. LASWELL and W. T. ELLIS for appellant.

T. W. JETT for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Affirming.

Edith King, a married woman, was fined $30.00 by the police court of Owensboro for selling intoxicating liquor without a license. On appeal to the Daviess circuit court she was again found guilty and her punishment fixed at a fine of $100.00 and costs. She appeals.

It is first insisted that the court erred in permitting the city to prove the license ordinance by filing a certified copy of only parts thereof. The copy introduced in evidence was certified by the city clerk as a true and correct copy. The record before us shows only those parts of the ordinance relating to liquor license. If, as a matter of fact, the certified copy of the ordinance was not complete, the defendant should have objected to its introduction on that ground, but not having done so, she cannot avail herself of the error of the trial court, if any, in permitting only a partial copy of the ordinance to be introduced in evidence.

It is next insisted that the court erred in authorizing the jury to find the defendant guilty if they believed from the evidence, to the exclusion of a reasonable doubt, that she, without license so to do, "either by herself, or by or through any person connected with her, sold any beer to the witness, John Walt." It appears that defendant and her husband lived at 112 Madison street, and that the defendant conducted a disorderly house at 120 Madison street, the adjoining residence. The beer was stored in an outhouse. The husband carried the key. He directed the negro to deliver the beer to 120 Madison street. There was evidence to the effect that the defendant herself sold beer to John Walt, and this evidence is uncontradicted. There was also certain evidence that the inmates of the house sold intoxicating liquors and turned over the proceeds to the defendant. While the use of the words, "or by or through any person connected with her," was not techincally correct, we are not disposed to hold that the error was prejudicial, in view of the fact that the evidence that defendant herself sold beer to the witness, Walt, was uncontradicted.

Another ground urged for reversal is that the court erred in not giving the jury the whole law of the case, it being insisted that the jury should have been told in substance that if they believed from the evidence that the defendant acted jointly with her husband in selling the liquor, or sold the liquor in his presence, the law presumed that she acted in obedience to his com-

mand and under his coercion, and they should find her not guilty, unless they believed from the evidence that she acted of her free will and volition. It may be conceded that, even at the time of Blackstone, it had been the rule of the common law for a thousand years that where a crime, with some exceptions, was committed by a married woman, conjointly with, or in the presence of, her husband, *prima facie* she was not criminally liable, as it was presumed that she acted in obedience to his commands or under his coercion. 13 R. C. L. p. 1238. It may also be conceded that the rule has been applied to all classes of misdemeanors, and even within recent years to the illegal sale of intoxicating liquors. Mulvey v. State, 43 Ala. 316, 94 Am. Dec. 684; State v. Cleaves, 59 Me. 298, 8 Am. Rep. 422, 4 Bl. Com. 28. While it is said that the reason for the rule is not quite clear, it is evident that it must have had its foundation in the peculiar relation which existed between husband and wife in the earlier days. At common law the husband had almost absolute control over the person of his wife; she was in a condition of complete dependence; could not contract in her own name; was bound to obey; she had no will and her legal existence was merged into that of her husband so that they were termed and regarded as one in law, "the husband being that one." 13 R. C. L. p. 983; Elliot v. Waring, 5 T. B. Mon. 338, 17 Am. Dec. 69; MacKinley v. McGregor, 3 Whart (Penn.) 369, 31 Am. Dec. 552. But these conditions have changed. Even at an early day courts of equity disregarded the fiction that husband and wife were one, and treated them as separate and distinct persons where it was necessary to protect the rights of the wife. Elliot v. Waring, *supra;* Winebrinner v. Weisiger, 3 T. B. Mon. 32. Indeed, the early rule that the husband might chastise his wife in moderation was never recognized or enforced in this state. Richardson v. Lawhon, 4 Ky. L. R. 998. By the act of March 15, 1894, now sections 2127 and 2128, Kentucky Statutes, the rights and liabilities of husband and wife are materially changed. Under that act, the husband has no estate or interest in his wife's property, but the wife holds and owns all of her estate to her separate and exclusive use, and free from the debts, liabilities or control of her husband. By virtue of that act the wife may make contracts, sue and be sued, collect her rents, and may sell and dispose of her per-

sonal property. In the case of Lane v. Bryant, 100 Ky. 138, 37 S. W. 584, 36 L. R. A. 709, this court declined to follow the common law rule that a husband was liable for slanderous words spoken by his wife, on the ground that the rule had been changed by the above statute, the court saying: "The rule is a harsh one at best, and, with the progress of civilization and the changes by a wise modern legislature of the relations between husband and wife as to the right of property and personal control by the husband, it would seem absurd, in this enlightened age, to regard the wife as a mere machine, made to labor and to talk as the husband directs, and to make him liable on that ground for her torts, when not committed by his direction or procurement." After calling attention to the provisions of the act of March 15, 1894, the court added: "While it may be and is the marital duty of both to aid each other in the support and maintenance of each and of their children, the control and use of the wife's property by her is independent of the husband, nor subject to his control, and the familiar doctrine that the legal existence of the wife is merged in that of the husband no longer exists; and as on this rule is based the common law liability of the husband for the wife's torts, and even for her debts contracted before her marriage, the reason for enforcing this doctrine is gone, and past adjudications on the subject will not be followed. The unity of person has been destroyed, and to say that it still exists with the constant legislation of this state endeavoring to secure the wife in her person and property, and at last by the act of March, 1894, making the wife equal of the husband in the control and use of property, would be opposed to the plain legislative intent, and result in enforcing a doctrine that has neither wisdom nor justice in it." In the more recent case of Turner v. Heavrin, 182 Ky. 65, 206 S. W. 23, the court, while recognizing the common law rule that a wife could not sue for criminal conversation with her husband, held that the rule had been changed by the act of 1894, and that a wife now had the right to bring such an action.

It will thus be seen that the one person idea of the marriage relation, as expounded by the common law authorities, can no longer be made the touchstone of a married woman's rights or capacities. Nagle v. Tieperman, 74 Kan. 32, 85 Pac. 941, 88 Pac. 969, 10 Ann. Cas. 977, 9 L. R. A. (N. S.) 674. Being secure in her person and

property, and her separate identity having been established, it is clear that the means, through which a husband exercised control and dominion over the person and property of his wife, no longer exist. Having sought and obtained these new rights and privileges, which have placed her upon a plane of equality with her husband, she must accept the corresponding obligations and responsibilities which those rights and privileges entail, and can no longer take shelter under the supposed dominion of her husband. This is the view taken by the Supreme Court of Tennessee in the case of Morton v. State, — Tenn. —, 209 S. W. 644, 4 A. L. R. 264, where it was held that the supposed duress of a woman by reason òf marriage, which relieves her of liability for crimes committed in the presence of her husband, depends upon her disability by virtue of the marriage, and is destroyed by statutes emancipating her from such disability. We therefore conclude that there is no longer a presumption that a married woman, who commits a crime conjointly with, or in the presence of, her husband, acts under his coercion. It follows that the court's failure to instruct the jury to that effect was not error.

Judgment affirmed.