# Richmond.

## JENNIE BROWN v. COMMONWEALTH.

### January 18, 1923.

1. HUSBAND AND WIFE—*Criminal Law—Presumption that Wife Acts Under Coercion of her Husband—Quaere.*—It was the common law rule that there is a rebuttable presumption that, when a wife commits a crime (except murder, treason, and perhaps some other felonies) in the presence of and by direction of her husband, she acts under his coercion and is immune from punishment. *Quaere,* as to what effect the emancipation of women and their independence in political, social, and economic matters has had upon this presumption.

2. INTOXICATING LIQUORS—*Husband and Wife—Criminal Liability of Wife Acting Under Direction of her Husband—Instructions—Case at Bar.*—In the instant case the evidence for the Commonwealth, admitted to be true by the accused, shows that she habitually sold corn whiskey at her home at different times during the year specified in the indictment. Accused testified that prior to these sales her husband directed her to make them, and that he was present when they were made. Witnesses for the Commonwealth denied that her husband was present when the sales were made. Accused asked for and was refused an instruction to the effect that if she was living with her husband and was previously told by her husband to sell the liquor, and that he was present when the sales were made, then the jury must acquit her.

   *Held:* That the instruction was plainly erroneous because it directed a verdict, whereas, and in any event, if the ancient exemption of the wife still exists, she was only entitled to have the jury told that there was a *prima facie* presumption in her favor, but that this presumption could be overcome by slight evidence that she was acting independently and without any coercion from her husband. Even if the instruction had been thus modified and given, no other verdict than that of guilty could have been properly rendered, for the evidence indicates that she was freely and habitually co-operating with her husband in the commission of the crime charged.

Error to a judgment of the Circuit Court of Madison county.

*Affirmed.*

The opinion states the case.

*Will A. Cook,* for the plaintiff in error.

*John R. Saunders, Attorney-General, J. D. Hank, Jr., Assistant Attorney-General,* and *Leon M. Bazile, Second Assistant Attorney-General,* for the Commonwealth.

PRENTIS, J., delivered the opinion of the court.

The accused has been convicted under the act prohibiting the sale of ardent spirits.   While she assigns two errors—one the refusal of the trial court to give the jury an instruction which she offered, and the other the refusal to set aside the verdict and grant her a new trial—the same question is presented by both assignments.

[1] The evidence for the Commonwealth, all of which the accused admits to be true, shows that she habitually sold corn whiskey at her home during the Christmas season of 1921, and at different times during the year specified in the indictment.   She is the wife of Henry Brown, and testified that prior to these sales her husband directed her to make them, and that he was present when they were made.   Four of the witnesses introduced by the Commonwealth denied that her husband was then present.

The instruction which was refused reads thus: "The court instructs the jury that if they believe from the evidence that the accused was a married woman, living with her husband in the house where the alleged sales of spirituous liquors were made at the time said alleged sales were made, and that she was previously told by her husband to sell said liquor, and that he was present when said sales were made, then they must acquit."

Justification for this instruction is argued because of the ancient common-law rule that there is a rebuttable presumption that when a wife commits a crime (except murder, treason and perhaps some other felonies), in the presence of and by direction of her husband, she acts under his coercion and is immune from punishment. The cases are numerous and discussions of the question abound, but the true rule, certainly unless abolished or modified by recent changes in the legal status of married women, is indicated by this court in *Uhl* v. *Commonwealth*, 6 Gratt. (47 Va.) 710. Mary Pugh, the wife of Robert Pugh, and several others, along with George Uhl, had been indicted for an attempt to burn a barn, and this is there said: "It appeared on the trial that the defendant, Mary Pugh, the wife of Robert Pugh, was present on the night when the combination was entered into, by the defendants, to burn the barn; that she assented and agreed to it; and was active in making the preparations for going to do the act, but she was not present at the barn; that her husband was present whilst she was so engaged. And thereupon the said Mary Pugh, by her counsel, moved the court to instruct the jury, that in point of law the said Mary could not be found guilty upon the evidence in the case. This instruction the court refused to give; but instructed the jury, that if they believe that the acts which she did were in the presence of her husband, and nothing appeared in the evidence or circumstances to show whether she was acting under his control and coercion, then the law will raise the *prima facie* presumption that she acted under such coercion and control; and she will not be guilty. But if they believe the facts and circumstances transpiring at the time show she was not acting under such coercion and control, but that she acted from her own free and

uncontrolled will, then if the evidence proves her guilty of the offense charged, she will be responsible to the law." The accused there excepted to the refusal of the court to give the instruction asked for, and to the giving of that which was granted, and this court by a refusal of the writ of error affirmed this ruling.

In *State* v. *Cleaves*, 59 Me. 298, 8 Am. Rep. 425, which was a prosecution against a wife as a common seller of intoxicating liquor, the trial court was requested to instruct the jury "that if any of the sales were made by the wife, in the presence of her husband, she would be presumed to act under the coercion, compulsion or direction of her husband, and would not be liable for such sales." This instruction was refused, and in affirming the judgment the court said this: "But the presumption of law that the wife committed an offense by the coercion of the husband, when he was present, is very slight, and may be rebutted by very slight circumstances. The presumption is in no respect conclusive. While, therefore, the first portion of the request was legally correct, the conclusion contained in the last clause, that she 'would not be liable for such sales,' is incorrect. She might be liable notwithstanding the presence of her husband, for the attendant circumstances might entirely negative influence or coercion on his part. The request did not recognize the distinction between a *prima facie* presumption which might be, and a conclusive presumption which could not be, contradicted, but was so framed as to give to the former the force and effect of a presumption of law, to which it was in no respect entitled."

In *People* v. *Wright*, 38 Mich. 744, 31 Am. Rep. 331, the conviction of a wife, where she choked a man and told him to keep still while her husband picked his pockets, was sustained upon the ground that under the

circumstances the jury was justified in finding that she was acting independently and not under her husband's coercion.

In the recent case of *Morton and Wife* v. *State*, 141 Tenn. 357, 209 S. W. 644, 4 A. L. R. 264 (note), a husband and wife were traveling together in an automobile in which he was illegally transporting six or eight sacks containing twenty quarts of whiskey each, and her conviction was sustained because of her guilty knowledge of the criminal character of the undertaking. It was not only there held that this common-law presumption, that a married woman committing a crime in the presence of her husband is acting under duress, may be rebutted by very slight circumstances, but also that this supposed duress of a woman by reason of marriage, relieves her from liability for a crime committed in the presence of her husband, depends upon her disability by virtue of her marriage, which is destroyed by recent statutes in Tennessee emancipating her from such disability, and that these statutes declare the public policy of the State with respect to the status of married women which destroys the common-law presumption.

The true principle is stated and the modern cases collected in 13 R. C. L., p. 1238, sec. 275, and there is a full and learned discussion of the whole question in note to *Bibb* v. *State*, 94 Ala. 31, 10 So. 506, in 33 Am. St. Rep. at page 89, supplemented by the note to *State* v. *Nargashian*, 106 Am. St. Rep. 723.

In this connection, we think that few will disagree with the expressions of Sir J. Stephen, in his note to article 30 of his Digest of Criminal Law: "Surely, as matters now stand and have stood for a great length of time, married women ought, as regards the commission of crime, to stand exactly on the same footing as

other people, but owing partially to the harshness of the law in ancient times and partially to its uncertain and fragmentary condition, it is disfigured by a rule which is tolerable only because it is evaded on practically every occasion where it ought to be applied."

Since this was written the emancipation of women has proceeded far. Their new independence in political, social and economic matters import increased responsibilities, and if the courts whose function it is not to enact but to declare the law are so hampered by the ancient precedents as to be unable to apply new and logical rules to changed, modern conditions, then it should be done by statute.

[2] In this case the instruction complained of was plainly erroneous because it directed a verdict, whereas, and in any event, if the ancient exemption still exists, she was only entitled to have the jury told that there was a *prima facie* presumption in her favor, but that this presumption could be overcome by slight evidence that she was acting independently and without any coercion from her husband. Even if the instruction had been thus modified and given, no other verdict than that of guilty could have been properly rendered, for the evidence indicates that she was freely and habitually co-operating with her husband in the commission of the crime charged.

*Affirmed.*