STATE OF IOWA, Appellee, v. CARRIE RENSLOW, Appellant.

No. 40077.

APRIL 14, 1930.

REHEARING DENIED DECEMBER 13, 1930.

*Carl P. Knox* and *W. D. Milligan,* for appellant.

*John Fletcher,* Attorney-general, *Neill Garrett,* Assistant Attorney-general, *R. E. Duffield,* County Attorney, for appellee.

ALBERT, J.—To an understanding of the questions raised, we find the following facts in the record:

One H. L. Moore conducted a general store in the town of Panora, Iowa, and on a given day (about the middle of March, 1929), one Curt Renslow, husband of the defendant, stole certain dresses and other articles from said store. The parties then went from Panora to Guthrie Center, where certain other articles of wearing apparel were stolen by Curt Renslow from a store in that town, known as the "Square Deal Store." The evidence shows that these parties traveled in a car belonging to the defendant, and in each instance when the articles were stolen, they were taken to the car by Curt Renslow, and turned over to the defendant, who placed them in a box then in the car; that, after the theft at Guthrie Center, the husband did not accompany the defendant home in the car; that she, with some other parties, took the car and drove to her home across the line in Greene County, and took the box containing these stolen goods with her, and later some of these articles were found in her room by the officers acting under search warrants.

The charge against the defendant was for receiving and aiding in concealing stolen goods and property. On the trial of the case, after having proven the theft of the property from the Moore Store at Panora, on which the indictment was based, the State was, over objection, permitted to prove the theft of goods from the store at Guthrie Center, and that the same were found in defendant's possession under the search warrant.

I. The first complaint of the defendant is that not all of the evidence with reference to the goods and theft at Guthrie Center was admissible. We held in *State v. Renslow,* 209 Iowa 982,  that, on the trial of this same defendant under a charge of larceny of goods from the Guthrie Center store, the evidence of what occurred in the Panora store was not admissible. In the case at bar, however, we do not have a charge of larceny, but a charge of receiving and aiding in concealing stolen goods. This latter charge involves an element not involved in the

644

charge of larceny above referred to. In the instant case, we have the element of guilty knowledge on the part of the defendant, and when this element is involved, the rule is settled that the receiving of stolen property at other times is admissible. In *State v. Boyd,* 195 Iowa 1091, 1. c. 1094, we had this same question, involving a similar charge, and we there said:

"We have frequently held that evidence of a similar transaction is admissible for the purpose of showing guilty knowledge on the part of the defendant that the goods which he received or concealed had been stolen" (citing *State v. Scott,* 136 Iowa 152, and *State v. Levich,* 128 Iowa 372).

The question therefore, is not an open one in this state, and the court did not err in admitting this testimony.

II. Among others, the defendant requested the court to give the following instruction:

"The law presumes that the influence of a husband over his wife is such that she is not held criminally liable for unlawful acts done by her in his presence, unless there is evidence to rebut this presumption, and satisfy the jury that the wife, in what she did, was exercising a free volition, and was guilty of independent criminal action on her own part."

This instruction was refused by the court, the defendant excepted thereto, and the failure to give such instruction is assigned as error.

The first time this question was before this court was in the case of *State v. Fitzgerald,* 49 Iowa 260, where the charge was the willful administering of drugs with intent to produce a miscarriage. The court there gave an instruction of which the above is a substantial copy. The attack made on the instruction was as to the latter part thereof, which, in effect, told the jury that the presumption was a prima-facie one only, and might be rebutted; and as against this assault, the court instructed that a prima-facie case of coercion was established when it was shown that the defendant was a married woman and that the criminal act was done in the presence of her husband, and that this presumption might be rebutted by evidence, and that the act of the wife was done by her while not in his presence, nor so immediately near

him as fairly to be held under his control and in his presence. This statement in the opinion was in answer to the assault made on the instruction.

In *State v. Kelly,* 74 Iowa 589, 590, a somewhat similar instruction was given in a murder case, and it thereby became the law of the case. The case was reversed because the jury did not follow the instruction.

In *State v. Fertig,* 98 Iowa 139, an instruction substantially like the one under consideration was given. No complaint was made against it, and it therefore became the law of the case. The case was reversed because the court admitted evidence of the declarations of George Fertig that his wife was the proprietor of a nuisance. Nothing further is said about the instruction.

In the case of *State v. Harvey,* 130 Iowa 394, an arson case, in the discussion of the evidence reference is made to the substance of the instruction under controversy in determining whether or not the defendants (husband and wife) were equals in guilt.

In *State v. Gill,* 150 Iowa 210, reference is made to this rule, but it was held that it had no application to the crime of keeping a bawdy house or a house of ill fame.

In *State v. Reynolds,* 189 Iowa 1033, l.c. 1038, the charge was murder, and the case of *State v. Kelly,* supra, was overruled, as being contrary to the weight of authority. The *Reynolds* case holds that the wife was not exempt from responsibility for the murder on this ground at common law.

It is to be noted at this point that in none of the cases in this state have we had the question of whether or not it was error for the court to refuse to give this instruction. It is also to be noted that we are not now dealing with a case wherein the evidence shows actual duress or coercion of the wife, but we have to do with the question of whether or not, where the wife commits a crime in the presence of her husband, there is a rebuttable presumption that coercion existed, and hence, that she is not liable.

That such a rule existed at common law no one will dispute. Blackstone in his Commentaries, Volume 4, page 29, said that this presumption had existed for at least a thousand years at the time he delivered his lectures. Its origin seems to be shrouded in mystery, and various courts have given various reasons for its existence. From its origin murder and treason have always

been excepted from the operation of the rule. In later years, the sale of intoxicating liquors and liquor nuisances have also been held an exception to the rule. The most prevalent idea of its origin, although not the only reason given, is the unity or oneness of husband and wife. A writer on this subject says:

"The subsequent limitation of his responsibility to cases in which the wife acted under his actual or presumed coercion might, in this point of view, be regarded as the result of a compromise between the old and the new systems; but whatever may be the origin of this curious privilege, we think that few persons will dissent from the views of Sir J. F. Stephen, as thus expressed in a note to Article 30 of his Digest of Criminal Law (3d Ed.) 355; 'Surely, as matters now stand, and have stood for a great length of time, married women ought, as regards the commission of crimes, to be on exactly the same footing as other people. But, owing partly to the harshness of the law in ancient times, and partly to its uncertain and fragmentary condition, it is disfigured by a rule which is tolerable only because it is practically evaded on almost every occasion where it ought to be applied.' "

There seems to have been, in the development of the law, a struggle to get away from this rule. A number of states have abrogated it by statute. The Wisconsin court, in *Miller v. State,* 25 Wis. 384, adds to the exceptions of murder and treason also robbery.

In 8 Ruling Case Law 65, Section 16, it is said:

"A married woman's status being what it is at the present time, the presumption should not, and generally does not, exist."

In *Morton v. State,* 141 Tenn. 357 (209 S. W. 644), it is held that, by reason of the emancipation of women from the responsibilities and disabilities of coverture, the foundation on which this presumption rested having been swept away, it carried with it this presumption.

It is a well known maxim that, where the reason for a rule ceases to exist, the rule is thereby abrogated. An elaborate note on this question will be found under the above entitled case in 4 A. L. R. 264 *et seq.*

In *King v. City of Owensboro,* 187 Ky. 21 (218 S. W. 297), the Supreme Court of Kentucky said:

"It will thus be seen that the one-person idea of the marriage relation, as expounded by the common-law authorities, can no longer be made the touchstone of a married woman's rights or capacities. Being secure in her person and property, and her separate identity having been established, it is clear that the means through which a husband exercised control and dominion over the person and property of his wife no longer exist. Having sought and obtained these new rights and privileges, which have placed her upon a plane of equality with her husband, she must accept the corresponding obligations and responsibilities which those rights and privileges entail, and can no longer take shelter under the supposed dominion of her husband. This is the view taken by the Supreme Court of Tennessee in the case of *Morton v. State*, 141 Tenn. 357, 209 S. W. 644, 4 A. L. R. 264, where it was held that the supposed duress of a woman by reason of marriage, which relieves her of liability for crimes committed in the presence of her husband, depends upon her disability by virtue of the marriage, and is destroyed by statutes emancipating her from such disability. We therefore conclude that there is no longer a presumption that a married woman who commits a crime conjointly with or in the presence of her husband acts under his coercion. It follows that the court's failure to instruct the jury to that effect was not error."

In *State v. Hendricks*, 32 Kan. 559 (4 Pac. 1050), where an instruction of this kind was asked, the Supreme Court of Kansas said:

"The laws of Kansas do not presume that a wife who unites with her husband in the commission of a crime acts under his coercion. On the contrary, the laws of Kansas presume that all persons of mature age and sound mind act upon their own volition, and are responsible for their acts. The statutes relating to crimes and punishments, and to the mode of procedure in criminal actions, do not, except in rare instances, make any distinction between married women and unmarried women, or between married women and married men, or between any kind of women and any kind of men. All alike are responsible for their acts. And in Kansas, women have all the rights and privileges that men have, except, merely, that they cannot vote at general elections. * * * The common law with reference to the disability of married women has but little room for operation in Kansas. Besides, Mr.

648

Wharton, in his work on Criminal Evidence, Section 733, speaking of the presumption contended for by the defendant, says: 'In the old practice in criminal cases, treason and murder were excepted from the operation of this presumption.' But, giving this presumption its fullest scope,—supposing that it has operation at common law in murder cases, as well as in many others,—still we do not think it can have any operation in Kansas; and this, on account of the changed condition of our society and institutions. The presumption was probably right when first adopted, for the state of society which then existed. But it cannot be right now, under our present condition of society. And it is not the law. There was once a reason for the presumption; but that reason has long ago ceased to exist in Kansas; and when the reason for the presumption has ceased to exist, the presumption itself must also cease to exist. Of course, it is still the law that, where a wife, in the presence of her husband and under his coercion, commits an act which would, under other circumstances, be an offense, she should not be considered as guilty of any offense; but there would be no presumption of law in such a case that she acted under the coercion of her husband, but the question as to whether she did, in fact, act under his coercion or not, would be a question of fact for the jury, and should be left to the jury.''

As evidence of the courts to escape this rule, a typical case is *Brown v. Commonwealth,* 135 Va. 480 (115 S. E. 542), where the Virginia court says that, while it recognizes this rule, the presumption is very slight, and would take little evidence to overcome it.

Numerous other cases might be cited along these lines which show the struggle of the courts to get away from this rule. As applied to the situation we have under the statutes of this state, where practically all of the disabilities and disadvantages of coverture are removed, and a woman stands, in the eyes of the law, with practically all of the rights, duties, and privileges of a feme sole, we see no reason for the further application of this rule in this state. A married woman of today, in Iowa, has, with rare exceptions, every right, duty, and privilege that her husband has, or that she would have if unmarried. With this emancipation of women from the disabilites of coverture, the reason for the rule which has heretofore existed at common law,

and has been partially recognized in some of our former cases, has vanished, and with it the rule should go. The court did not err, therefore, in refusing to give this instruction asked by the defendant.

The two questions just discussed are the only ones actually raised under the motion for a new trial and the points relied upon for reversal, except that it is claimed in a general way that the evidence is not sufficient to support the verdict. We have read this record carefully, and reach the conclusion that the evidence is sufficient to support the verdict.

Anything that has been said in the discussion of our previous cases that conflicts herewith is overruled.—*Affirmed.*

MORLING, C. J., and EVANS, STEVENS, FAVILLE, DE GRAFF, KINDIG, WAGNER, and GRIMM, JJ., concur.